**WORLD WIDE TIRE COMPANY,**
**Appellant,**

v.

**Almond Charles BROWN, Appellee.**

**No. C14–82–039CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 9, 1982.

Wayne Adams, Lorance & Thompson, Houston, for appellant.

John C. Werner, Werner & Rusk, Houston, for appellee.

Before MILLER, MORSE and JAMES, JJ.

## OPINION

MORSE, Justice.

This is an appeal from a judgment of the trial court which awarded the plaintiff, Almond Charles Brown, the sum of $454,-067.63, as reduced from jury findings totalling $465,000 in damages for an eye injury he received due to the negligence of the defendant, World Wide Tire Company. The principal question presented for review is whether portions of plaintiff's jury argument constituted reversible error.

This case arose from an accident which occurred November 12, 1977, when a tire came off of a truck owned by James H. Shaw & Company and struck the window of the vehicle in which the plaintiff was a passenger, permanently injuring his left eye. James H. Shaw & Company was a defendant in the trial court, but was not a party to this appeal.

The evidence showed that on or about October 28, 1977, defendant World Wide Tire Company had installed studs that were too long on the tire that came off, thereby proximately causing plaintiff's injuries. Upon finding said defendant liable for plaintiff's injuries, the jury awarded plaintiff $5,000 for past medical expenses (where medical bills were stipulated to be $4,067.63), $125,000 for past pain and suf-

fering, $10,000 in past lost earnings (where actual earnings claimed lost were tabulated by plaintiff's attorney as $6,688.00), and separately, $25,000 for past impairment and disability. In addition, the jury awarded plaintiff $25,000 for future medical expenses, (in spite of his attorney's asking the jury to "put in $500"). As to that item, however, the trial court granted a remittitur of $10,000, reducing the future medical award to $15,000. The jury further awarded plaintiff $50,000 for future physical pain and mental anguish, $150,000 for future loss of earning capacity, and also $75,000 for future impairment and disability.

Plaintiff sustained an injury to his left eye as a result of glass from the broken window which lodged in and lacerated that eye. For a part of his two days in hospital, plaintiff's right eye was temporarily "swollen shut." He later had no problems or complaints involving the right eye. The injury to plaintiff's left eye required emergency surgery and stitches in the eye. Plaintiff now has an impaired vision of approximately 20/50 in his left eye with the use of corrective lenses. At the time of trial in September of 1981, the plaintiff was not undergoing medical treatment, nor was he experiencing any pain. The record reflects that prior to the accident plaintiff had a stable work record and that after the accident plaintiff continued to hold a series of jobs in the trucking industry at various salaries above or in the same range as his previous wages. The duration of these jobs was anywhere from three weeks to two years. He voluntarily quit the last of these in April, 1981, to move to Dallas to open a furniture distributorship. But, within the next few months the plaintiff experienced an unrelated serious injury as a passenger in another auto accident, and has not opened the distributorship.

In twenty-seven points of error appellant raised insufficiency of the evidence, no evidence and against the great weight and preponderance of the evidence points with regard to the future medical award, the loss of past earnings award, the future physical pain and mental anguish award, the past and future physical impairment and disability award, and the loss of future earning capacity award. Appellant further argued that comments by the plaintiff's counsel during voir dire about the possible loss of his right eye were improper and that the jury verdict was excessive and manifestly unjust. Because of our disposition of appellant's twenty-fourth point of error, which requires us to reverse and remand this case, we need not reach the merits of those points of error individually.

Appellant's twenty-fourth point of error argued that the trial court committed reversible error by allowing plaintiff's counsel to make the following argument to the jury:

> We are instructed that we should do unto others as we would have them do unto us. What would you be satisfied with if you had to come down here with an injury such as this, what would you be satisfied with if you had the same problems that Mr. Brown has, what would you be satisfied with in the way of money damages awarded to you by a jury.
>
> If you can come out and say that if I would have gone through the same experience a completely innocent victim, if I would have had the same pain and suffering in the past, mental anguish in the past, if I know that I would have the same physical pain—
>
> DEFENSE COUNSEL: This is improper argument and I object.
>
> THE COURT: Overrule your objection.
>
> PLAINTIFF'S COUNSEL: Just think about those things, you all get back there and discuss this, will you?

After a thorough analysis of the case law on "Golden Rule" arguments and the requirements for harmful error, we find that the above quoted argument was indeed harmful error and requires us to reverse and remand this case to the trial court.

 It is not improper for an attorney, in his closing argument, to argue the "Golden Rule," i.e. do unto others as you would have them do unto you, because that alone merely asks the jury to follow the Golden Rule and would require the jury to look

with equal solicitude to the rights of both plaintiff and defendant. *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943). However, the argument in this case went well beyond proper jury argument in that it amounted to a direct appeal to the jury to consider the case from an improper viewpoint, because its effect was to ask the members of the jury to put themselves into the plaintiff's shoes and to give the plaintiff what *they* would *want* if they were injured, rather than what the evidence showed *plaintiff* was *entitled* to receive as compensation. The *Fambrough* case, *supra,* is controlling in this case. The *Fambrough* case held a very similar jury argument to be improper on the same basis and distinguished prior cases upon which plaintiff relies, by making a distinction between cases merely reciting the Golden Rule to the jury and those asking the jury to put themselves in the plaintiff's shoes.

We evaluate the argument made for appellee herein as the court described the argument which required the court to reverse and remand in *Dallas Ry. & Terminal Co. v. Smith,* 42 S.W.2d 794, 795 (Tex.Civ. App.—Waco 1931, no writ):

> "The above argument was an appeal to the prejudice of the jury and calculated to induce the jury to abandon their position as fair and impartial jurors and to assume the position of a partisan or claimant in the case. The jury was told to give the plaintiffs, not what would reasonably compensate her for the injuries sustained, as directed in the court's charge, but what they would want or think they were entitled to if they were the plaintiffs in the case. This was an appeal to the jury to apply an improper measure of damages contrary to that given in the charge. Such argument was unwarranted and calculated to prejudice the rights of the appellants."

The case of *Southern Pacific Company v. Hayes,* 391 S.W.2d 463 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.), citing numerous cases, held that a similar jury argument was reversible error as being a "direct appeal to the jurors to put themselves in the position of a litigant and to

consider their own personal feelings in arriving at a verdict instead of basing it upon the legally admitted evidence and the instructions of the court." *See also: Fidelity and Casualty Company of New York v. Johnson,* 419 S.W.2d 352 (Tex.1967) with regard to suggesting that jurors must justify their decision.

It is important to note that the trial judge overruled defense counsel's objection to the improper argument. Like the court in *Fambrough, supra,* we are of the opinion that the argument was not of such a nature that its harmful effect could not have been removed, had the trial court sustained the objection thereto offered at the time the argument was made, and properly instructed the jury not to consider it. Moreover, we think that when defense counsel made his objection to the argument in the presence of the jury, at the proper time, and the objection was promptly overruled in the presence of the jury, the jury must have been drawn to the conclusion that the argument made was proper.

The leading case on the harmless error rule is *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835 (Tex.1979). Although this case did not deal with a "Golden Rule" argument such as the one in the present case, it consolidated the harmless error rule into seven elements which are as follows:

> "In the case of improper jury argument, complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. 3 McDonald, Texas Civil Practice § 13.-17.2 (1970). There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversible harmful error. How long the argument continued, whether it was repeated or abandoned and whether there

was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these factors the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. *Aultman v. Dallas Ry. & Term. Co.*, 152 Tex. 509, 260 S.W.2d 596 (1953). Rules 434, 503, TEX.R.CIV.P."

In the present case an error was committed by the improper jury argument that was not invited or provoked by appellant. The error was preserved by his timely objection to the argument. Since the trial judge overruled his objection, the error was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. Indeed, the fact that the trial judge overruled the objection undoubtably left an impression in the minds of the jury that it was proper for them to take into consideration what they would want in monetary damages if they had an injury such as plaintiff's. The jury is supposed to reach a verdict based on the evidence before them and not from a subjective viewpoint, such as the one suggested to them by plaintiff's counsel.

Further, appellant met his burden of showing that the argument was by its nature, degree and extent reversibly harmful error considering the factors suggested in the *Reese* case, *supra*. The tenor of the whole argument suggested the jury consider what they would want if they were the plaintiff. As the above quoted argument reflects, plaintiff's counsel repeatedly asked the jury what they would want if they had the same experience. His remarks were not said in passing; they were made and repeated in several different versions, all designed to build up to and drive home the same point, to wit: pretend you are the plaintiff with these injuries and give him what you would want. Another factor to consider was whether the argument was repeated or whether it was abandoned. By hindsight, from an overall evaluation of the entire argument of plaintiff's attorney, the closing appeal to the jurors to assume the position of a claimant appears clearly to have been an intentional pattern. After appellant's objection to the argument was overruled, plaintiff's counsel went on to say, "Just think about those things, you all get back there and discuss this, will you?" That remark undoubtably referred back to his previous remarks, which we find improper.

We have closely examined all of the evidence to determine the probable effect the argument had on the material findings of the case. This reversal is based on an evaluation of the whole case. The damage awards that the jury returned for certain special issues were not based on the evidence presented. We believe that the improper jury argument, which was the last thing the jury heard before retiring and rendering a verdict, is the only possible explanation for the extremely large amounts awarded. Without any evidence of special circumstances entitling plaintiff to damages for impairment or disability over and above the $160,000 loss of earnings and earning capacity and the $175,000 awarded for past and future physical pain and mental anguish, the jury found an additional $100,000 for plaintiff's physical impairment and disability suffered and to be suffered in the future. The jury awarded $10,000 for loss of earnings in the past, where plaintiff proved only that he lost, at most, earnings of $6,688.00. The jury awarded plaintiff $5,000 for past medical expenses, when in fact he only had past medicals of $4,067.63. That the trial judge reduced the amount of the award for past medicals from $5,000 to $4,067.63 because that amount had been stipulated to by both parties does not erase the indication of passion, prejudice or bias by the jury. The jury awarded plaintiff $25,000 for future medical expenses where all the plaintiff

requested was $500, and there was no showing of reasonable probability of necessity for or the probable cost of further significant medical expenses. Although this was susceptible to more definite proof, plaintiff presented no basis on which the jury could reasonably award $25,000. Although the trial judge granted a $10,000 remittitur, leaving $15,000 for future medical, the harmful effect of the improper argument on these material findings by the jury was shown.

The jury went on to award plaintiff the sum of $150,000 for future loss of earning capacity where there was no real showing that his future earning capacity was affected by his injuries. In fact, the plaintiff was embarking on a totally new career at the time of trial. These factors lead us to the conclusion that the probability that the improper caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence.

Accordingly, we reverse and remand this case to the trial court.