LONE STAR FORD, INC., Appellant,

v.

Kay CARTER, Appellee.

No. B14–92–00353–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 18, 1993.

Dale M. Tingleaf, Houston, for appellant.

Russel T. Holt, Houston, for appellee.

Before MURPHY and CANNON, JJ., and ROBERT E. MORSE, Jr., former J. (sitting by designation).

## OPINION

ROBERT E. MORSE, Jr., former Justice, sitting by designation.

Kay Carter (Carter) brought suit against Lone Star Ford, Inc. (Lone Star Ford) alleging violations of the Texas Deceptive Trade Practices Act, negligent misrepresentation, breach of contract, fraud, fraud in the inducement of the contract, and breach of a bailment agreement. Following a jury trial, the trial court entered judgment for Carter based on the jury's verdict in the amount of $83,670.00 plus attorney's fees and interest. The judgment of the trial court is reversed and the cause is remanded for a new trial.

On February 20, 1990, Carter telephoned Lone Star Ford and informed the company that she needed to purchase a car. She asked whether Lone Star Ford could bring cars to her home for her inspection. Carter stated that she wished to spend approximately $3,000.00 on the car. As a result of this phone call, Lone Star Ford sent Victor Matthews and another salesman to Carter's home. The salesmen brought two used cars to Carter's apartment. One car was a 1985 foreign hatchback, and the other was a 1982 Oldsmobile Cutlass. The Cutlass had been mistakenly tagged as a 1984 model.

Carter testified that Matthews made numerous representations to her concerning the quality of the Cutlass: (1) it was a one owner car; (2) it was reliable; (3) it never had any problems; (4) it was a better car than the hatchback; and (5) that it was a 1984 model. Matthews admitted at trial that he told Carter that the Cutlass was a 1984 model; however, he also stated that he did so because the car was mistagged, not to intentionally mislead Carter. Carter paid approximately $3,000.00 for the Cutlass, and signed all of the purchase paperwork "in blank" at her home. She agreed at trial that she bought the car "as is" knowing that it had over 101,000 miles on it. While the paperwork reflected that the car was a 1982 model, Carter testified that because she had signed the paperwork "in blank" she did not learn that the car was a 1982 model until the car broke down.

Over two months later, on April 26, 1990, Carter was moving to Clear Lake, outside of Houston, where she was to begin a new job. She had the Cutlass packed with her personal possessions. During the drive, the car's warning light came on, indicating that the car was overheating. She pulled off of the highway. A mechanic stopped and tried to help her get the car running but could not.

Subsequently, Lone Star Ford sent a tow truck to retrieve the Cutlass. Once the Cutlass and Carter were at the dealership, Carter received the title to her car. She testified that this was the first time she learned that the Cutlass was a 1982 model, and not a 1984 model. Carter became upset and confronted a Lone Star Ford employee. Carter testified that the employee told her to get a lawyer and get the car off the lot. Lone Star Ford presented testimony to the effect that because Carter was so upset, she was asked to remove the car from the lot. She left the car, and her personal possessions that were in it.

Carter testified that she made several attempts to inquire about repairs and about her possessions. Carter testified that Lone Star Ford rebuffed all her attempts so she hired an attorney. Lone Star Ford presented testimony that Carter was told to take the car off the lot. Carter refused to take the car, and the Cutlass is apparently still at the Lone Star Ford dealership. Carter brought suit against Lone Star Ford alleg-

ing numerous causes of action. The jury found in favor of Carter and the judgment based on the verdict awarded her over $83,000.00 in damages. Lone Star Ford appeals from that judgment.

In its first three points of error, appellant Lone Star Ford complains about the jury argument conducted by Mr. Holt, Carter's attorney. Appellant contends that the trial court erred in overruling its objections to the improper jury argument and in allowing Carter's attorney to argue matters outside the record. Appellant argues that the improper argument inflamed and prejudiced the jury, and the trial court's failure to sustain the objections conveyed to the jury the impression that the court approved of the argument and thus, the jury was thereby encouraged to consider it. Appellant also contends that it was error to enter judgment based on the verdict because the improper jury argument caused the jury to render a verdict contrary to that which would have been rendered but for the improper argument. Because points of error one, two, and three all involve the same issue, i.e., the allegedly improper jury argument, they will be discussed together.

The argument complained of by Lone Star Ford occurred during Carter's rebuttal to Lone Star Ford's closing argument, just before the case went to the jury:

MR. HOLT [Carter's attorney]: I read back about a year ago, I think the name was on a clear day you can see General Motors from 20 miles away. I looked for the book and I couldn't find it. I believe it's written by a former employee of Ford Motor and it talks about the Ford Pinto.

MR. TINGLEAF [Lone Star Ford's attorney]: He didn't put the book in evidence and I object to him telling the jury something about a book that's not in evidence.

THE COURT: This is closing. The objection is overruled.

MR. HOLT [Carter's attorney]: I believe it's called on a clear day you can see General Motors 20 miles away. They talk about the Pinto car [where] they located the gas tanks in the back right behind the bumper and when someone has a rear-end collision the cars explode, many times killing families. Ford found out and it came before their Board of Directors and they had to make a decision.

MR. TINGLEAF [Lone Star Ford's attorney]: I have to object at this time, because this had nothing to do with the case. There is no evidence on it. He's trying to inflame the jury against this defendant just because they sell Ford automobiles and I object strenuously.

THE COURT: I again overrule the objection. This is closing argument. I will allow the plaintiff some latitude in creative analogy.

MR. HOLT [Carter's attorney]: I apologize. Let me try to continue. Ford knew this gas tank [was] located behind the bumper and when someone rear-ended those cars, oftentimes those would explode, killing people, sometimes families. They had a decision whether or not to recall these cars, spend billions of dollars relocating the gas tank or leaving them in the cars. They made a business decision that it was too expensive to relocate those gas tanks. As a direct result of that decision I don't know how many, but I know lives and families were killed because Pintos were rear-ended on the highways, cars exploded killing people all because of a business decision. This case is not that severe, thank God. I'm sorry but it's still about a business decision[.] Lone Star Ford made a business decision to do anything for Kay except to tell her to hire a lawyer. That's what she did. Here we are after she has fought tooth and nail, almost two years, and I thank you for being a part of this trial, being a [part of the] process. I thank you for your time you have given us. Thank you, ladies and gentlemen.

MR. TINGLEAF [Lone Star Ford's attorney]: At this time the defendant Lone Star Ford would further object again and move the Court to instruct the jury not to consider for any purpose anything that Mr. Holt said in final argument with regard to Pintos and Ford Motor Company.

THE COURT: The objection is overruled. That concludes the presentation of the evidence and the final argument in this case. At this time you'll go back in the jury room and select a presiding juror. You will read the charge out loud once again and commence your deliberations.

MR. LAWHORN [Juror]: Can we have a calculator?

THE COURT: If there is any question that you have, including that question, please put it in writing, because the questions I have to deal with for the record purposes have to be in writing and signed by the presiding juror.

 Texas Rule of Civil Procedure 269 governs the parameters of closing argument. Under that rule, attorneys are required to confine their arguments strictly to the evidence and to the arguments of opposing counsel. Tex.R.Civ.P. 269(e). There is no question that Carter's attorney went outside the evidence presented in this case. There was no evidence in the case regarding the book mentioned by counsel, no evidence involving the Ford Pinto, and no evidence of anyone being killed because of a business decision by Lone Star Ford. The argument was clearly beyond the evidence presented in the case. Nor was the argument a true response to any argument made by the attorney for Lone Star Ford. Carter contends that during its closing argument, Lone Star Ford characterized its actions as mistakes. Carter alleges that the "Pinto" argument was an analogy used to counter that characterization and show the jury that Lone Star Ford's actions were calculated business decisions rather than mistakes. While we agree that analogy is a tool that can be used during closing argument, we fail to see how Lone Star Ford's "mistake" argument, which was based on evidence in the record, either invited or provoked Carter's attorney into making, even by analogy, statements regarding Ford Motor Company and the exploding Pintos. Why did the attorney use the Pinto analogy? The car in question was a Cutlass, not a Pinto. Cutlass is manufactured by Oldsmobile, not by Ford Motor Company. The only connection in this case to Ford Motor Company is the fact that Lone Star Ford is a Ford dealership. No decision in this case caused anyone to suffer physical injury or die. It is clear that the attorney's purpose in making this argument was to inflame the jury toward Lone Star Ford. It is unlikely that the jury would distinguish between Ford Motor Company and Lone Star Ford, the dealership. Carter states that her attorney "took care" to note that the effects of the two "business decisions" were significantly different. We disagree. The only statement by the attorney was "this case is not that severe, thank God." This hardly constitutes making a significant distinction between the case at bar and the Pinto case.

It would, at the very least, be a stretch of the imagination to find that the Pinto argument was formulated only in response to the argument made by Lone Star Ford. Therefore, since the argument did not confine itself to the evidence and was not in response to any argument presented by Lone Star Ford, it was improper.

 To obtain a reversal of a judgment on the basis of an improper jury argument, the appellant must prove: (1) an error; (2) the error was not invited or provoked; (3) the error was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial; and (4) the error was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial court. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979). Further, unless the argument is of the incurable type, the appellant must also prove "that the argument by its nature, degree, and extent, constituted reversibly harmful error," and "that the probability that the improper argument caused harm is greater than the probability that the verdict was based upon proper proceedings and evidence." *Id.* at 839–40. The length of the argument, whether it was repeated or abandoned, and whether there was cumulative error are proper inquiries in this determination. *Id.* Finally, the appellate court must evaluate the jury argument in light of the entire case, beginning with voir dire

and ending with closing argument. *Id.* at 840.

We have already determined that appellant Lone Star Ford has met the first two elements of this test: the argument was error, and it was not invited or provoked. Lone Star Ford preserved its error by objecting three separate times during the course of the argument, and by asking the trial court to instruct the jury to disregard the argument. Since the trial court overruled the objections, the error was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. *See World Wide Tire Co. v. Brown,* 644 S.W.2d 144, 147 (Tex.App.— Houston [14th Dist.] 1982, writ ref'd n.r.e.). Indeed, the fact that the trial court overruled all of the objections and stated that it would "allow the plaintiff some latitude in creative analogy" undoubtedly gave the jury the impression that it was proper and encouraged the jury to take the argument into consideration. *See Id.* The jury is supposed to reach a verdict based on the evidence presented in the case, not on prejudice toward the defendant incited by counsel's argument.

Further, Lone Star Ford has met its burden of showing that the argument made by Carter's attorney was by its nature, degree, and extent reversibly harmful error. *See Reese,* 584 S.W.2d at 839–40. The tenor of the argument suggested that since Ford Motor Company would manufacture a car that killed people, Lone Star Ford wouldn't think twice about misrepresenting a car's value to a customer. This was a "like father, like son" argument that had no place in this case. In effect, Carter's attorney was calling Ford Motor Company a wanton killer whose only concern was the almighty buck. How could the jury not associate the "killer" Ford Motor Company with Lone Star Ford dealership? The extent of the argument was also damaging. Carter's attorney stated that Ford Motor Company manufactured a car that "killed families" not once, but four times. Far from abandoning this prejudicial tactic, counsel for Carter stressed the fact that families were killed because of a decision by Ford Motor Company. There was no evidence in the case to suggest that Lone Star Ford had any connection to Ford Motor Company and the decisions it made regarding the Pinto. But counsel clearly desired the jury to make such a connection with his intentional, repeated referrals to the Pinto catastrophe. The remarks were not made in passing; they were repeated several times, all designed to build up to and drive home the same point, to wit: if Ford Motor Company will kill people to make money, doesn't it follow that a Ford dealership would mislead a customer for money? This argument was unwarranted and clearly calculated to prejudice the jury against Lone Star Ford.

We have examined the entire record to determine the probable effect the argument had on the material findings of the case. Certain damage awards that the jury returned were not based on the evidence presented. The jury awarded $22,200 for lost wages, where Carter proved that she lost, at most, $10,500.00, a difference of over $10,000.00. The jury awarded $2,500.00 for the personal belongings Carter allegedly left in the car. The testimony given by Carter showed that the clothes were worth only $1,000.00. Even using a breakdown of the testimony given by Carter as to what articles of clothing were in the car and their value, it still does not match the amount awarded by the jury. The final element of damages awarded by the jury which we believe was affected by counsel's improper closing argument were the exemplary damages. The jury awarded Carter $50,000.00 in exemplary damages. While this amount is not out of line with the actual damages awarded, $33,-670.00, under the evidence presented in the case, it seems far more severe than what the evidence called for. Further, these damages were awarded in relation to certain actual damages that we have determined were unsupported by the evidence. We believe that the improper jury argument, which was the last thing the jury heard before retiring, is the only possible explanation for some of the amounts awarded. We believe that the argument

encouraged the jury to increase the damages, especially the punitive damages.

But beyond this, we find the juror's remark, made at the end of the argument, most telling. At the conclusion of the improper argument regarding the comparison between Ford Pintos and this case, a juror asked for a calculator. Before any liability had even been discussed by the jury, at least one juror was ready to calculate damages.[1] The timing of this remark adds to our concern about the argument made by Carter's attorney.

If we allow attorneys to make arguments wherein they call the opposing party a killer when there is absolutely no evidence to support such a contention, we are not doing justice. That is in effect what occurred in this case. Carter's attorney called Ford Motor Company a killer and wanted the jury to associate Lone Star Ford with Ford Motor Company. The effect of which was to brand the dealership a killer as well. In *Southwestern Greyhound Lines v. Dickson*, 149 Tex. 599, 236 S.W.2d 115, 119 (1951), the Texas Supreme Court stated:

Whether we say that an excessive appeal to passion or prejudice is wrong for that very reason or because in theory or actual fact, it goes "outside the record" or violates the court's instruction that the jury shall be guided by the evidence, the result is the same; and there can be but a small difference between the error involved in the "Golden Rule" type of argument or the type in which emphasis is laid on the obvious corporate character or nonresident status of a party or the generally obvious disparity of economic standing between the parties and, on the other hand, an argument which makes its appeal for favor through passion or prejudice aroused by abuse, "name calling", or other types of excessive language. Undoubtedly there is no absolute rule against expressing even a highly unfavorable opinion of an opposing party or witness. [Citations omitted] *But the salutory right of counsel thus to speak*

*his mind is subject to obvious limits, which excessive language may exceed— either by connoting an idea or fact without support in the record or by its very character as inflammatory.*

(emphasis supplied). This is where this court draws the line. We will not allow counsel, by analogy or implication, to refer to a party as a "killer of families" in a civil suit involving a used car. Such an argument is nothing more than appeal to the jury's passion designed to incite the jury against the opposing party.

We hold that the jury argument regarding the Ford Pintos was improper, and based on our evaluation of the whole case, the probability that the improper argument caused harm is greater than the probability that the verdict was based on the evidence. Therefore, the argument constitutes reversible error. Appellant Lone Star Ford's points of error one through three are sustained.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

---

**1.** It is interesting to note that the juror who asked for the calculator was subsequently named as the jury foreperson.