Affirmed and Memorandum Opinion filed July 27, 2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-00890-CV



 

E & A Utilities, Inc., Appellant

V.

Ronnie Joe, Appellee

 



On Appeal from the County Civil
Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 875009



 

MEMORANDUM OPINION

            E & A
Utilities, Inc. (“E & A”) filed suit against Ronnie Joe alleging that Joe
failed to pay for construction services provided by E & A.  The jury
rejected E & A’s breach-of-contract claim but awarded E & A $4,500 in
quantum-meruit damages.  In six issues, E & A challenges the trial court’s judgment. 
We affirm.  

I.   Background

E & A connects sewer lines from private properties
to sewer lines owned by the City of Houston (“the City”).  In April 2006, E
& A and Joe entered into an agreement for E & A to connect Joe’s house
at 5814 Tautenhahn (“the property”) to the City’s sewer lines.  E & A
alleges that the parties agreed to a price of $6000.  Era Land, Jr. (“Land”) is
president and founder of E & A.  Land testified that he inspected and
measured the property before proposing to perform the work for $6,000. 
According to Land, Joe failed to sign any proposal or agreement but told Land,
“Go ahead and do the work.”  Land procured a work permit from the City for the
project.  At trial, Land described the services and materials provided by E
& A, which included the removal of Joe’s existing septic tank.  Land
testified that, after he completed the project, Joe refused to pay $6,000,
instead offering $1,000.

Joe’s version of events differs significantly.  Joe
is employed as a truck driver and lives at 5814 Tautenhahn but testified that another
person owns the property.  He testified that he had an agreement with E & A
to connect the property to the City’s sewer line for $2,500.  Joe admitted that
E & A connected the property to the City’s sewer line but testified that E
& A did not remove the existing septic tank.  Joe testified that upon
completion of the project, he tendered $2,500 to E & A, but Land responded
he was owed $6,000.

The jury found that Joe did not fail to fulfill his
contract with E & A.  However, the jury found that E & A provided
compensable services to Joe, the reasonable value of which was $4,500, and
awarded E & A attorney’s fees.  The trial court rendered judgment on the
jury’s verdict.

II.   Late-Filed Pleading 

In its first issue, E & A contends the trial
court erred by allowing Joe to file an untimely amended answer in which a
verified denial and new defense were asserted.

We review a trial court’s decision on whether to allow the amendment of pleadings under
an abuse-of-discretion standard.  Air Prods. &
Chems., Inc. v. Odfjell Seachem A/S, 305 S.W.3d 87, 92 (Tex.
App.—Houston [1st Dist.] 2009, no pet.).  A trial court abuses its discretion
when its ruling is arbitrary, unreasonable, or without reference to any guiding
rules or legal principles.  K-Mart Corp. v. Honeycutt, 24 S.W.3d 357,
360 (Tex. 2000).

Under the Texas Rules of Civil Procedure, “any
pleadings, responses or pleas offered for filing within seven days of the date
of trial or thereafter . . . shall be filed only after leave of the judge is
obtained, which leave shall be granted by the judge unless there is a showing
that such filing will operate as a surprise to the opposite party.”  Tex. R.
Civ. P. 63.  Even when leave of court is required to file an amended pleading,
the trial court may not refuse an amended pleading unless (1) the opposing
party presents evidence of surprise or prejudice, or (2) the amendment asserts
a new cause
of action or defense and thus is prejudicial on its
face, and the opposing party objects to the amendment. Greenhalgh
v. Serv. Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990).

In determining whether an amendment is prejudicial on
its face, the amendment must be evaluated in the context of the entire case.  See
Stephenson v. LeBoeuf, 16 S.W.3d 829, 839 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied).  An
amendment is prejudicial on its face if (1) it asserts a new substantive matter
that reshapes the nature of the trial itself, (2) the opposing party could not
have anticipated the amendment in light of the prior development of the case,
and (3) the opposing party’s presentation of the case would be detrimentally
affected.  Dunnagan v. Watson, 204 S.W.3d 30, 38 (Tex. App.—Fort
Worth 2006, pet. denied).

E &
A presented no evidence of surprise or prejudice.  Thus, the trial court abused
its discretion by allowing the amendment only if it was prejudicial on its
face.  We first consider whether the amendment asserted a new substantive
matter that reshaped the nature of the trial itself. 

Joe’s
inclusion of a verified denial in his amended answer did not involve a new
substantive matter but was merely an attempt to “comply with a procedural
requirement of contesting [E & A’s] sworn account by a verified denial
pursuant to a rule that functions to allocate the burden of proof.”  Smith
Detective Agency, 938 S.W.2d at 749; see also Chapin & Chapin, Inc.
v. Tex. Sand & Gravel Co., 844 S.W.2d 664, 664–65 (Tex. 1992) (per
curiam) (holding that amendment adding a verified denial filed the morning of
trial “did not change a single substantive issue for trial”).  Thus, the
verified denial was not prejudicial on its face.

Joe also
added the following sentence to his amended answer: “Defendant does not own the
property located as 5814 Tatenhahn Road, Houston, Texas 77016 . . . .”  We fail
to understand how this amendment reshaped the nature of the underlying contract
dispute.  Joe admitted at trial that he entered into an agreement with E &
A to connect the property to the City’s sewer system.  Whether Joe owned the
property was inconsequential to the existence of the parties’ agreement but
instead related to whether E & A could foreclose on a mechanic’s lien on
the property.  The existence of a lien was beyond the scope of trial; E &
A’s counsel explained before trial that the lien is “not relevant to the issues
here.  [It’s] relevant to whether or not we can collect on any judgment, if we
should get one.”  Therefore, the sentence added in Joe’s amended answer did not
assert a new substantive matter that reshaped the nature of the trial.

Accordingly,
we hold that the trial court did not abuse its discretion in allowing the
amended answer.  We overrule E & A’s first issue.

III.   Factual Sufficiency

In its fifth issue, E & A argues that the
evidence is factually insufficient to support the jury’s award of damages and
attorney’s fees.

In a factual-sufficiency review, we consider and
weigh all the evidence, both supporting and contradicting the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998); Thomas v.
Uzoka, 290 S.W.3d 437, 452 (Tex. App.—Houston [14th Dist.] 2009, pet.
denied).  When, as here, a party attacks factual sufficiency with respect to an
adverse finding on which it had the burden of proof, it must demonstrate on
appeal that the finding is against the great
weight and preponderance of the evidence.  Dow Chem. Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001).  We will set aside the finding only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust.  Id. 
The trier of fact is the sole judge of the credibility of witnesses and the weight
to be given to their testimony.  GTE Mobilnet of S. Tex. Ltd. P’ship v.
Pascouet, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied).  Because we are not a fact finder, we may not pass upon the witnesses’
credibility or substitute our judgment for that of the jury, even if the
evidence would support a different result.  Mar. Overseas Corp., 971
S.W.2d at 407; Thomas, 290 S.W.3d at 452.  The amount
of evidence necessary to affirm a
judgment is far less than the amount necessary to reverse it.  Thomas, 290
S.W.3d at 452; Pascouet, 61 S.W.3d at 616.  Thus, if we reverse a
judgment for factual insufficiency, we must detail the evidence relevant to the
issue and state how the contrary evidence greatly outweighs the evidence in
support of the verdict; we need not do so when affirming a jury’s verdict.  Mar.
Overseas Corp., 971 S.W.2d at 407; Thomas, 290 S.W.3d at 453.

A.   Damages

E & A first argues that the jury’s award of
$4,500 is against the great weight and preponderance of the evidence.  The
proper measure of damages for a claim in quantum meruit is the reasonable value
of the work performed and materials furnished.  City of Houston v. Swinerton
Builders, Inc., 233 S.W.3d 4, 10 n.7 (Tex. App.—Houston [1st Dist.]
2007, no pet.).

At trial, Land described the equipment, materials,
and labor provided by E & A in completing the project.  E & A presented
an invoice for $6,000 that was purportedly sent to Joe.  The value or price of
the services provided and materials used were not itemized in the invoice.[1] 
E & A’s services included digging multiple trenches, connecting the
property to the City’s sewer main, and destruction and removal of the existing
septic tank.  Land testified that $6,000 was a “fair amount” for the work
performed.  We conclude this testimony constitutes some evidence of the
reasonable value for the work performed.  See Brender v. Sanders Plumbing,
Inc., No. 02-05-00067-CV, 2006 WL 2034244, at *4 (Tex. App.—Fort Worth July
20, 2006, pet. denied) (mem. op.) (“To establish the right to recover
reasonable charges, a claimant need not use the word ‘reasonable’; a claimant
need only present sufficient evidence to justify a jury’s finding that the
costs were reasonable.”); see also Elec. Wire & Cable Co. v. Ray,
456 S.W.2d 260, 263 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref’d
n.r.e.) (testimony that the price charged for services was reasonable was some
evidence relative to the reasonable value of the services).

Consequently, E & A presented evidence supporting
its contention that the reasonable value of services rendered was $6,000.  No
other evidence regarding reasonable value of the services was presented. 
However, Joe’s testimony that E & A failed to remove his septic tank
provided the jury with a rational basis to award damages below $6,000. 
Accordingly, we cannot conclude that the jury’s award of $4,500 in quantum-meruit
damages was so against the overwhelming weight of the evidence as to be clearly
wrong and unjust.

B.   Attorney’s Fees

E & A next argues that the jury’s finding
regarding attorney’s fees was against the great weight and preponderance of the
evidence.  The jury awarded E & A $2,000 in attorney’s fees for trial
preparation, $1,000 in attorney’s fees for appeal to the court of appeals,
$1,000 for petition for discretionary review to the supreme court, and $1,000
for briefing in the supreme court if petition is granted.

The
reasonableness of attorney’s fees
is ordinarily left to the factfinder, and a reviewing court may not substitute
its judgment for the jury’s.  Smith v. Patrick W.Y. Tam Trust, 296
S.W.3d 545, 547 (Tex. 2009); Ragsdale v. Progressive Voters League,
801 S.W.2d 880, 881 (Tex. 1990) (per curiam).  Factors to be
considered in determining the amount of attorney’s fees to be awarded include
the following: (1) the time and labor required, novelty and difficulty of the
question presented, and the skill required; (2) the likelihood that acceptance
of employment precluded other employment; (3) the fee customarily charged for
similar services; (4) the amount involved and the results obtained; (5) the
time limitations imposed by the client or the circumstances; (6) the nature and
length of the professional relationship with the client; (7) the expertise,
reputation, and ability of the lawyer performing the services; and (8) whether
the fee is fixed or contingent.  Arthur Andersen & Co. v. Perry
Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997).

E & A’s counsel, Michael Jones, testified that he
has been licensed to practice law in Texas since 1980 and is board certified in
civil trial law.  Jones testified that he has known Land for ten years and has
previously represented E & A.  Jones testified that E & A incurred
approximately $11,400.00 in attorney’s fees and expenses for trial preparation,
which was a reasonable, necessary, and customary amount.  His firm’s invoices
were admitted and itemized most of the legal services performed before trial. 
The invoices indicated that the attorneys who worked on this case billed at
hourly rates of between $100 and $300 and that almost sixty hours of legal
services had been provided.  Jones testified that the hourly rates his firm
charged were customary with those of other attorneys in Harris County, Texas. 
When asked to explain why his attorney’s fees exceeded the amount in
controversy, Jones testified that E & A incurred $5,000 in attorney’s fees
attempting to serve Joe, including seventeen visits by the process server to
Joe’s house and an eventual motion for substituted service; Jones testified that
he believes Joe evaded service.  Jones also testified that additional fees were
incurred because the case was set for trial several times but never reached,
thus necessitating preparation for trial multiple times.  Finally, Jones
testified that $15,000 was the necessary amount for attorney’s fees for each
stage of the appellate process.

We recognize nothing controverted that Jones’s firm’s
hourly rates of between $100 and $300 were reasonable and necessary in Harris
County.  See Cullins v. Foster, 171 S.W.3d 521, 539–40 (Tex.
App.—Houston [14th Dist.] 2005, pet. denied) (holding award of attorney’s fees
factually insufficient because jury’s implicit finding regarding the necessary
amount of time expended by attorneys was unreasonably low).  Dividing the
$2,000 awarded in attorney’s fees by $200 (the median hourly rate charged) indicates
the jury awarded E & A attorney’s fees for ten hours of service.  Jones
testified that he and co-counsel had each provided one-and-a-half hours of
legal services on the day of trial, which, at the time of Jones’s testimony,
did not yet include Joe’s case-in-chief or closing arguments.  Thus, approximately
half of the jury’s ten-hour finding involves services Jones’s firm provided on
the day of trial.  Nevertheless, we conclude there were facts and circumstances
weighing against the requested amount of fees.

During cross examination, Jones agreed that few
documents were filed in this case and only minimal discovery was conducted. 
The jury was aware of the simplistic nature of E & A’s case, which was
presented through the relatively short testimony of Land, a handful of
exhibits, and Jones’s testimony and documents regarding attorney’s fees.  The
amount E & A sought in attorney’s fees was more than double the amount
awarded in quantum meruit.  See Inwood N. Homeowners’ Ass’n, Inc. v. Wilkes,
813 S.W.2d 156, 157–58 (Tex. App.—Houston [14th Dist.] 1991, no writ)
(determining that amount in controversy is attendant circumstance); see also
Travis Law Firm v. Woodson Wholesale, Inc., No. 14-07-00204-CV,
2008 WL 4647380, at *4 (Tex. App.—Houston [14th Dist.] Oct. 21, 2008, no pet.)
(mem. op.) (holding that attendant circumstances supported amount of fees
awarded).  Further, when asked by Joe’s counsel whether it would have been more
reasonable to attempt personal service on Joe three or four times, as opposed
to seventeen times, and then move for substituted service, Jones did not answer
“no” but replied, “We did all those things.”  The jury could have rationally
determined that ten hours was a reasonable amount of time to expend in legal
services for this case.  Accordingly, we hold that the jury’s award of $2,000
in attorney’s fees for trial preparation is not so against the overwhelming
weight of the evidence as to be clearly wrong and unjust.

We next
consider whether the jury’s award of $1,000 for each stage in the appellate
process is against the great weight and preponderance of the evidence.  As
mentioned above, Jones testified that $15,000 was the necessary attorney’s fees
for each of the three appellate stages.  Although Joe’s counsel did not cross
examine Jones regarding, or present evidence controverting, the requested appellate
fees, there were circumstances under which the jury could have questioned the
reasonableness of these fees.  Again, the jury was aware of the simplistic nature
of the case; at $200 per hour, the jury’s $1000 award allows for five hours of
legal services per appellate stage.  Further, the $45,000 requested for all
three appellate stages significantly exceeded the amount awarded in quantum-meruit
damages.  Therefore, we cannot conclude the jury’s award of $1,000 for each stage
of appeal was so against the great weight and preponderance of the evidence as to
be clearly wrong and unjust.  

Having
rejected each factual-sufficiency challenge, we overrule E & A’s fifth
issue.

IV.   Expert Testimony

In its third issue, E & A contends the trial
court erred in allowing Joe to offer expert testimony when he was not qualified
as an expert.   

The following exchange occurred at trial:

[Joe’s Counsel]:
Now, are you familiar with what is necessary to do what you asked Mr. Land to
do, tap into the existing City of Houston water tank?

[Joe]: Yes, I am.

[E & A’s
Counsel]: Objection, Your Honor.  Calls for expert testimony.  This man has not
been qualified as an expert witness.

[Trial Court]:
Okay.  Well, he already answered, so overruled.

[Joe’s Counsel]:
And how did you get that experience?

[Joe]: Well, I ran
a water line on my dad’s property and tapped it into the city.

[Joe’s Counsel]:
The same thing that Mr. Land did for you?

[Joe]: Something
like that.

[Joe’s Counsel]:
So, you knew what needed to be done.

[Joe]: Right.

[Joe’s Counsel]:
And you went there and you observed everything that took place?

[Joe]: Right.

E & A argues the trial
court erred by failing to require Joe to demonstrate education, experience, and
training in the relevant area of sewer construction.  According to E & A,
Joe’s opinion testimony gave him an “aura of expertise and credibility before
the jury to testify about [E & A’s] work that he did not deserve.”  E &
A contends the verdict was likely impacted by Joe’s inadmissible opinion
testimony because the jury awarded E & A less than the $6,000.  E & A
also argues that the trial court erred by admitting this testimony because Joe
was not designated as a testifying expert.  See Tex. R. Civ. P. 193.6(a).

            We hold that
the trial court did not err by admitting the challenged testimony because Joe
did not offer an expert opinion.   He merely testified he knew “what needed to
be done” to connect the property to the City’s sewer line because he had
previously performed similar work.  Joe never opined regarding the reasonable
and necessary cost of materials and labor for the project.  Although he
testified that he would not have agreed to pay $6,000, he did not base this
testimony on his experience in sewer construction.

Further,
even if the trial court erred by allowing Joe to testify regarding his
experience in sewer construction, we hold that such error was harmless.  When an evidentiary ruling is
erroneous, we will not reverse the court’s judgment unless the ruling probably
caused rendition of an improper judgment.  Tex. R. App. P. 44.1(a); Nissan
Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004).  “A reviewing
court must evaluate the whole case from voir dire to closing argument,
considering the ‘state of the evidence, the strength and weakness of the case,
and the verdict.’”  Reliance Steel & Aluminum Co. v. Sevcik, 267 S.W.3d
867, 871 (Tex. 2008) (quoting Standard Fire Ins. Co. v. Reese,
584 S.W.2d 835, 841 (Tex. 1979)).  “[I]t is not necessary for the complaining
party to prove that ‘but for’ the exclusion of evidence, a different judgment
would necessarily have resulted.”  McCraw v. Maris, 828 S.W.2d 756, 758
(Tex. 1992).  The erroneous admission of evidence is likely harmless if the
evidence was cumulative, or the rest of the evidence was so one-sided that the
error likely made no difference in the judgment.  Reliance Steel, 267
S.W.3d at 873.  However, if erroneously-admitted evidence was crucial to a key
issue, the error is likely harmful.  Id.

The
substance of Joe’s testimony merely supported his assertion that he previously performed
similar work, not that he is an expert regarding value of the construction
services rendered.  During jury argument, Joe’s counsel mentioned Joe was familiar with the
services rendered.  However, it appears Joe’s counsel ultimately argued—albeit
improperly—that Joe agreed to $2,500 because another contractor made a similar bid
(see issue four, infra).  Additionally, E & A’s counsel argued that
Joe “is not a water sewer contractor.  He doesn’t have a license with [the
City.]  That’s all wishful thinking.”  The jury was aware of the limited nature
of Joe’s sewer-construction experience; it is unlikely the jury considered Joe an
expert regarding the value of E & A’s services.  Therefore, reviewing the
record as a whole, we cannot conclude Joe’s testimony regarding his work on a
sewer line probably caused rendition of an improper judgment.  We overrule E
& A’s third issue.

V.   Improper Jury Argument

In its
fourth issue, E & A contends the trial court erred in allowing jury argument
unsupported by the evidence.

Generally,
to obtain reversal on the basis of improper jury argument, an appellant must
prove (1) an error (2) that was not invited or provoked, (3) was preserved by
an objection, and (4) was not curable by an instruction, a prompt withdrawal of
the statement, or a reprimand by the judge.  Standard Fire Ins., 584
S.W.2d at 839.  Prongs three and four are met when the trial court overrules a timely objection to
improper argument.  See Lone Star Ford, Inc. v. Carter, 848
S.W.2d 850, 854 (Tex. App.—Houston [14th Dist.] 1993, no writ).  Appellant
must also prove “that the argument by its nature, degree and extent constituted
reversibly harmful error,” and “that the probability that the improper argument
caused harm is greater than the probability that the verdict was grounded on
the proper proceedings and evidence.”  Standard Fire Ins., 584 S.W.2d at
839–40.  The length of the argument, whether it was repeated or abandoned, and
whether there was cumulative error are proper inquiries in this determination. 
Id.  We must closely examine all of the evidence to determine the
probable effect of the erroneous argument on a material finding.  Id. at
840.  Finally, we must evaluate the jury argument in light of the entire case,
beginning with voir dire and ending with closing argument.  Id. 

During
opening statement, Joe’s counsel stated the jury would hear evidence that a
different construction company offered to perform the project for $1,895.  At
trial, Joe’s counsel asked Joe what price this second company bid, but the
trial court sustained E & A’s hearsay objection, and the testimony was
excluded.  During closing argument, the following exchange occurred:

[Joe’s
counsel]: Mr. Joe testified that he’s familiar with this type of work.  He testified
that he had somebody lined up to do the work for $1,895. - -

[E &
A’s counsel]: Objection, you Honor.  That never came into evidence.

[Joe’s
counsel]: I think it did.

[Trial
Court]: I’m going to overrule that.  It did.

[Joe’s
counsel]: He had somebody out there to do the work for $1,895.  He testified
that . . . Mr. Land ran the guy off and said: I have a permit.  He can’t do the
work.  That’s how he came up with $2,500.  He would never have signed an
agreement to pay Mr. Land $6000.

Because existence of the
$1,895 bid was not admitted into evidence, the trial court erred in overruling
E & A’s objection.  See Tex. R. Civ. P. 269(e).  We next review the
entire record to determine whether this error was so harmful that reversal is
required.

            The gist of
the improper argument was that Joe would not have agreed to pay $6,000 for the
project because another company had previously bid $1,895.  The principal issue
for the jury to decide was whether the contract was for $2,500 or $6,000.  During
opening statement, Joe’s counsel expressed, “Our dispute with [Land] is that
[Joe] never agreed to pay him $6000 for a job that the evidence will show [Joe]
had found somebody to do it for $1,895.”  At trial, Joe testified that he had
an agreement with another contractor, but Land “ran the guy off.”  Additionally,
the trial court exacerbated the improper jury argument by stating in front of
the jury that evidence supported the argument.  Nevertheless, we cannot conclude
the probability that the improper argument caused harm is greater than the
probability the verdict was grounded on proper proceedings and evidence.

Regarding
E & A’s breach-of-contract claim, the jury by implication believed Joe’s
testimony that the contract was for $2,500 because of its finding that Joe did
not fail to comply with the contract.  We do not believe the probability that
the jury chose to believe Joe because of the improper argument is greater than
the probability the jury chose to believe Joe based on the proper proceedings
and evidence, i.e., it is unlikely the jury found Joe’s testimony that
the contract was for $2,500 credible because he had a separate bid for $1,895. 


Regarding
E & A’s quantum-meruit claim, the jury ultimately awarded $4,500, an amount
significantly higher than $1,895 or $2,500.  Further, as discussed in our
factual-sufficiency analysis, the jury could have decided to award $4,500 because
it found E & A failed to remove Joe’s septic tank.  Thus, we cannot
conclude the probability that the jury awarded $4,500 because of the improper
argument is greater than the probability the jury awarded this amount based on
the proper proceedings and evidence.  We overrule E & A’s fourth issue.

VI.   Alleged Error in Allowing Joe to Present Evidence

In its
second issue, E & A argues the trial court erred by allowing Joe to testify
and present evidence to dispute E & A’s claims.  Apparently, E & A is
arguing that Joe should not have been allowed to present evidence because his
amended answer was untimely.  We overrule this argument based on our
disposition of the first issue.  

E &
A also argues the trial court erred by allowing Joe to present evidence because
he was erroneously allowed to opine that he was familiar with the work
performed by E & A and Joe’s counsel gave improper jury argument regarding
another contractor’s bid of $1,895.  According to E & A, viewed
cumulatively, these errors caused the jury to conclude “there was no agreement
with [E & A] for $6000, [Joe] was knowledgeable about E & A’s sewer work,
and that the reasonable value of [E & A’s] labor, work and material was
less than $6000.”  See Weidner v. Sanchez, 14 S.W.3d 353, 377–78 (Tex.
App.—Houston [14th Dist.] 2000, no pet.) (explaining standard for cumulative
error analysis).  However, as previously discussed, Joe’s testimony regarding
his familiarity with the services E & A rendered and Joe’s counsel’s
improper jury argument did not probably cause the rendition of an improper
judgment, and we decline to hold differently simply because Joe complains of
cumulative error.  We overrule E & A’s second issue.

VII.   Motion for New Trial

Finally, in its sixth issue, E & A contends the
trial court erred by allowing its motion for new trial to be overruled by
operation of law.  Specifically, E & A argues the motion for new trial should
have been granted because the trial court erred by granting Joe permission to
file an untimely amended answer and offer evidence in support of his new
defense.  Because we have already determined that the trial court did not err by
granting Joe permission to file the amended answer, we overrule E & A’s
sixth issue. 

            We affirm the
judgment of the trial court.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel consists of Justices Yates,
Seymore, and Brown. 









[1]
The only evidence supporting itemized prices for any parts of the project was
Land’s testimony that the project required $1,120 worth of stabilized sand and
evidence that E & A paid $25 for a work permit.