**AMELIA'S AUTOMOTIVE, INC., Appellant,**

v.

**Ruben RODRIGUEZ d/b/a Hi–Tech Towing, Appellee.**

No. 04–95–00417–CV.

Court of Appeals of Texas, San Antonio.

March 27, 1996.

Rehearing Overruled March 27, 1996.

768

J. Stephen Weakley, S. Jeffrey Gately, Duncan, Ulman, Weakley, Glass & Bressler, Inc., San Antonio, for Appellant.

Carl J. Kolb, Carl J. Kolb, P.C., San Antonio, for Appellee.

Before CHAPA, C.J., and HARDBERGER and GREEN, JJ.

## ON APPELLANT'S MOTION
## FOR REHEARING

CHAPA, Chief Judge.

On appellant's motion for rehearing, our opinion issued March 6, 1996, is withdrawn and this opinion is substituted therefor.

This is an appeal from an adverse judgment based on appellant's alleged violations of the Texas Deceptive Trade Practices—Consumer Protection Act. In seven points of error, appellant contends (1) that the jury was incurably prejudiced by personal attacks made against appellant's trial counsel, (2) that the evidence is legally and factually insufficient to support the jury's findings of liability and damages, and (3) that the trial court erred in severing the issue of attorney's fees into a separate action. We reverse and remand.

## FACTUAL AND PROCEDURAL
## BACKGROUND

Appellant, Amelia's Automotive, Inc., is a business engaged in the retail sale of automobile parts and the repair and overhaul of gasoline and diesel engine motor blocks. Appellee, Ruben Rodriguez, operated a towing business during the time relevant to this lawsuit. In March of 1992, appellee took the

short block from his 1985 tow truck to appellant for repair. The parties agreed that appellant would perform the necessary repairs to the engine. Shortly after appellee replaced the reworked engine in his tow truck, it failed. Appellant agreed to repair the engine pursuant to a warranty. Following the second repair, appellee's engine failed again. Appellant refused to repair the engine a third time because it asserted that the repairs were out of warranty. Consequently, appellee sued appellant under the Texas Deceptive Trade Practices Act.

At trial, most of the relevant factual issues surrounding the case were disputed, including the terms of the express warranty, the cause of the engine's failure, and whether appellant promised to replace appellee's broken crankshaft with a new one. The jury found in favor of appellee and judgment was entered in the amount of $17,500 plus pre- and post-judgment interest and court costs. The trial court denied appellant's motion for new trial.

### ARGUMENTS ON APPEAL

In its third through sixth points of error, appellant contends that the evidence presented at trial is legally and factually insufficient to support the jury's findings that appellant violated the Deceptive Trade Practices Act and to support the jury's findings concerning damages.

■ In considering a legal insufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). If there is more than a scintilla of evidence to support the finding, the no evidence challenge must fail. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987).

■ In considering a factual sufficiency point, we may not substitute our judgment for that of the trier of fact, but must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, we are not fact finders and we do not pass upon the credibility of witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ Appellant contends that the evidence is both legally and factually insufficient to support a finding that it was liable under the DTPA for its actions in connection with the rebuilding of appellee's diesel engine. Steven Gehrlien testified as an expert witness on behalf of appellee. Gehrlien testified that, based upon his training and experience as an auto mechanic and his evaluation of the engine and parts in question, appellant's failure to size the connecting rods most likely resulted in the first failure of the engine's crankshaft. There was evidence that appellant welded together the previously broken crankshaft and re-installed it in appellee's engine when the engine was repaired the second time. Gehrlien testified that the re-installation of a previously broken and welded crankshaft was below the standards of good and workmanlike service.

■ Appellant's attack on the sufficiency of the evidence is based primarily on its opinion of the expertise of Steven Gehrlien. Appellant contends that although Gehrlien has much experience as a general mechanic, he has no personal experience as a machinist. As such, appellant contends that Gehrlien's opinions are legally irrelevant. Appellant also complains that a part of Gehrlien's testimony was based upon conversations he had with machinists who had done work for him in the past and also upon reference books not admitted into evidence. Appellant, therefore, contends that Gehrlien's opinions are based on inadmissible hearsay. However, none of these objections to Gehrlien's credentials or testimony were raised at trial. Accordingly, appellant has waived consideration of these complaints on appeal. Tex.R.App.P. 52(a). In any event, we conclude that Gehrlien was properly qualified as an expert wit-

ness. His credentials reveal a vast amount of knowledge in the area of automotive mechanics and repairs. Whether he actually performs machinist work is irrelevant in this case as there is no dispute that he was qualified to look at an engine and determine the cause of its failure.

Appellant also complains that Gehrlien's testimony regarding appellant's failure to size the engine's connecting rods is irrelevant as it refers to appellant's actions before the engine was returned for repairs a second time. Appellant contends that anything that happened prior to the second return is inconsequential because appellant honored its warranty the first time the engine was returned. Appellant argues that there is no evidence regarding the cause of the engine's second failure. However, Gehrlien testified that the cause of the second engine failure was a broken crankshaft. He also testified that the crankshaft removed from appellee's engine had been fractured and welded back together. He indicated that, in his expert opinion, it is was not workmanlike to install a welded crankshaft into appellee's engine. This is coupled with appellee's testimony that appellant represented to him after the first engine failure that a new crankshaft had been installed in place of the broken one.

Further, appellant makes no complaint regarding the sufficiency of the evidence to support the jury's finding of breach of warranty, which was also a basis for the determination of appellant's liability under the DTPA. Accordingly, the evidence assessed under the appropriate standards is both legally and factually sufficient. Appellant's third and fourth points of error are overruled.

Appellant also contends that the evidence is legally and factually insufficient to support the jury's finding of damages. The jury question at issue was submitted in broad form. *See* 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 7.02 (1991). When asked to determine what sum would fairly and reasonably compensate appellee for his damages resulting from the conduct of appellant, the jury was instructed to consider the following: 1) the amount paid to appellant; 2) cost of repairs to appellee's tow truck; 3) loss of use of the tow truck; 4) appellee's mental anguish; and 5) whether appellee would have dealt with appellant absent the conduct at issue. The jury awarded damages of $15,000.

■ When a damage issue is submitted to the jury in broad form, it is difficult to determine with certainty what amount of the award for damages is attributable to each element considered. *Haryanto v. Saeed*, 860 S.W.2d 913, 921 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Thus, a meaningful review of damages questions is also difficult. The only way that a defendant can effectively contest a multi-element damages award on appeal is to "address each and every element and show that not a single element is supported by sufficient evidence." *Greater Houston Transp. Co. v. Zrubeck*, 850 S.W.2d 579, 589 (Tex.App.—Corpus Christi 1993, writ denied). If there is just one element that is supported by the evidence, the damages award must be affirmed. *Id.*

■ Because appellee's theory of damages was based upon the loss of use of his tow truck, we will address the loss of use element. Appellant contends that loss of use may only be proven by the reasonable rental value of a replacement vehicle. However, where an individual loses the right to accrue earnings from the use of his property, he is entitled to recover his lost profits as loss of use damages. *Chemical Exp. Carriers, Inc. v. French*, 759 S.W.2d 683, 687–88 (Tex. App.—Corpus Christi 1988, writ denied).

■ Appellee testified regarding the existence of an established clientele for his towing services. He also testified that he lost business as a result of not being able to service his customers while he was operating without the truck at issue. Appellee offered into evidence invoices for towing services performed by the tow truck at issue for the last seven months that the truck was operating. There was also evidence of the amount of disbursements appellee was making on the truck during that time in the form of maintenance, fuel, and insurance payments. This indicated that, on a good month, appellee was grossing approximately $1,200 per month with the truck. Sixteen months elapsed from

the time appellee's cause of action accrued until the time of verdict. This evidence alone provides a rational basis for the jury's determination of damages. *See Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992).

In further support of the verdict, there was evidence of the amount appellee actually paid appellant and others in efforts to have his engine repaired. There was also evidence presented regarding the fact that appellee lost his business as a result of the expenses and lost earnings associated with the engine failure. As such, there is clearly some evidence to support the jury's findings, and those findings are not so contrary to the overwhelming weight of the evidence as to be manifestly wrong or unjust. Appellant's fifth and sixth points of error are overruled.

In its first and second points of error, appellant contends that the trial court erred in refusing to grant a mistrial and denying appellant's motion for new trial because appellee's counsel engaged in the improper questioning of witnesses and incurable jury argument. Appellant complains of two separate instances of alleged misconduct by appellee's counsel during the trial of this case. First, appellant protests what it considers to be the improper questioning of Danny Webb, the owner of the appellant business. Appellant's second complaint pertains to improper and prejudicial jury argument.

During redirect examination of Webb by appellee's counsel, the following exchange took place:

Q: An honest attorney is very important to you, isn't it?

A: Honesty is very important to me ...

Q: You obviously know what a frivolous lawsuit is. You just said that this was one of them.

A: I think you are suing me for no reason.

Q: You wouldn't want to deal with a lawyer who did that type of thing, would you? Yes or no.

A: Deal with someone that sues someone for nothing?

Q: Yes, sir.

A: No.

Q: Of course not. And you wouldn't want to deal with a convicted felon, would you? Yes or no. As your attorney?

A: A convicted felon?

Q: Did you know your attorney[1] was disbarred for five years in filing a frivolous lawsuit?

Following this exchange, both appellant and appellee moved for a mistrial, which the trial court overruled. The following exchange took place:

[Appellant's Trial Counsel]: I move for a mistrial and I move for sanctions against him because that's not admissible and he knows it.

. . . .

The Court: Just a second. The judge's turn. Ladies and Gentlemen, you all may take a fifteen minute recess.... I'm going to sustain the objection. We're not going into this any further.... Not in front of the jury or anywhere else.

[Appellee's Counsel]: I would like a mistrial. This whole trial has been a travesty, Your Honor. We've brought in all kinds of things that have nothing to do with the merits of this case. Lawyer's calling each other names. There are names to go around. Here's a conviction of a federal crime [sic] failing to file his tax returns.... Here is a final judgement awarding $133,000 against [appellant's trial counsel] affirmed by the Court of Appeals for frivolous lawsuits. And here's his disbarment for five years because of all the people that he's sued arising out of this obsessive ten-year ordeal with his paralegal. Now, Your Honor, I did not want to do this. I struck [appellant's trial counsel] as an expert so I could avoid doing this during this trial. But what has taken place here over the last 45 minutes or so [sic], and the jury's shaking their heads. They think this is ridiculous.... 

The Court: Let me tell you something. I'm going to overrule your motion for a

---

1. We note that appellant's trial attorney, against whom the complained of accusations were made, is not the same attorney who represents appellant on appeal.

mistrial. I overrule your motion for a mistrial. And the way you complain about the judge's rulings is in the Court of Appeals.

The trial then resumed with no instruction to the jury to disregard the statements made by appellee's counsel.

 Attacks upon the integrity of opposing counsel are categorically prohibited. *Circle Y of Yoakum v. Blevins,* 826 S.W.2d 753, 758 (Tex.App.—Texarkana 1992, writ denied); *Beavers v. Northrop Worldwide Aircraft Services, Inc.,* 821 S.W.2d 669, 680 (Tex. App.—Amarillo 1991, writ denied); *American Petrofina, Inc. v. PPG Industries, Inc.,* 679 S.W.2d 740, 755 (Tex.App.—Fort Worth 1984, writ dism'd by agr.); *Charter Medical Corp. v. Miller,* 605 S.W.2d 943, 949 (Tex.Civ. App.—Dallas 1980, writ ref'd n.r.e.). Not only is criticism or abuse of counsel disdained by Texas courts, but it is in violation of the Texas Rules of Civil Procedure and the Canons of Ethics. TEX.R.CIV.P. 269(e); TEX.DISCIPLINARY R.PROF. CONDUCT 3.04(c) (1989), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1996) (STATE BAR RULES art. X, sec. 9).

 Appellee attempts to justify his counsel's actions by contending that the defamatory comments made by his counsel were invited and provoked. Specifically, appellee alleges that appellant's counsel had resorted to personal criticism of appellee's counsel at the onset of the case. Appellee argues that his counsel was merely responding in kind, attacking the credibility of one who had accused him of filing a frivolous lawsuit.

 Regardless of whether they were provoked, the comments at issue in the present case clearly constitute an uncalled for attack on the character of appellant's counsel. Moreover, the substance of those attacks had absolutely no relevance to the case being tried. It is improper to make allegations regarding the integrity of counsel when such allegations relate to the trial and are not supported by the record. *Beavers,* 821 S.W.2d at 680. Such allegations become, if possible, even more unwarranted when they are entirely personal in nature and have no function in the litigation other than to inflame and arouse prejudice in the jury.

The presumption of error in this case is strengthened by the fact that both attorneys requested a mistrial, acknowledging the fact that both sides had been unfairly prejudiced by the actions of counsel. Because the trial court overruled both appellant and appellee's motions for mistrial, the erroneous comments made during Webb's redirect examination would not have been curable even if the trial court had instructed the jury to disregard the statements, which it did not. *See Lone Star Ford, Inc. v. Carter,* 848 S.W.2d 850, 854 (Tex.App.—Houston [14th Dist.] 1993, no writ); *World Wide Tire Co. v. Brown,* 644 S.W.2d 144, 147 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). The prejudice generated by the improper questioning was exacerbated by the fact that the jury was excused immediately following appellant's motion for mistrial and sanctions, and then returned to no explanation or instruction regarding the disruption. The fact that the jury was excused reinforced the severity of the comments. Then, the resumption of the trial without comment from the trial court only served to insinuate to the jury that the comments had been condoned.

 Unwarranted attacks against the integrity of opposing counsel are generally considered to be incurable. *Circle Y,* 826 S.W.2d at 758. In fact,

[i]f counsel goes outside of the record or indulges in inflammatory language in order to influence the jury to return a verdict favorable to his client, or if he gives the jury information not in evidence calculated to injure the opposing side and such argument is not in reply to argument of opposing counsel, this constitutes misconduct and requires a reversal of the case; unless it clearly appears that no injury resulted to the other side.

*Miller,* 605 S.W.2d at 948 (quoting *Ramirez v. Acker,* 134 Tex. 647, 138 S.W.2d 1054, 1055 (1940)). Where a statement by counsel is incurable, it is necessarily harmful and requires reversal. *See Texas Employer's Ins. Ass'n v. Guerrero,* 800 S.W.2d 859, 864 (Tex. App.—San Antonio 1990, writ denied).

The incurability of the comments at issue is manifest. The accusations made in this case strike at the heart of an attorney's credibility, and by association, the attorney's client. Comments impugning the character of a party's counsel result in those traits being equated with the party himself. *Miller*, 605 S.W.2d at 947–48. In this case, the disparaging comments, by their nature, encompassed fraud. Fraud is an integral component of a DTPA action, against which appellant was attempting to defend himself. The possibility that the jury's feelings regarding appellant's attorney colored their view of the case is impossible to overcome.[2]

However, we cannot allocate sole responsibility for the degeneration of this trial to appellee's counsel. There is evidence of misbehavior on the part of both attorneys in this case. Accordingly, we conclude that the misbehavior of the attorneys on both sides resulted in the rights of the parties being lost. We are therefore compelled to reverse the court's judgment and remand this case for further proceedings to be conducted in a manner consistent with the rules of professional conduct and the rules of procedure.

Because we find it necessary to remand this case for further proceedings based upon the conduct of counsel, appellant's remaining point of error becomes moot and will not be addressed.

The judgment of the trial court is reversed and the case is remanded for further proceedings.

---

2. It is impossible not to consider the present distaste our society has for attorneys in general. If the members of the jury had the general impression that attorneys are cunning and dishonest, how much more would their opinions be colored once they were exposed to the childish and malicious conduct displayed by the attorneys in this case?

It is interesting to note that although the jury returned a verdict in favor of appellee and awarded damages of $15,000, it awarded attorney's fees of zero. This is, perhaps, an indication of this jury's regard for the unprofessionalism that they witnessed.