**Steven BALOGH and Kenova
Construction Corporation,
Appellants,**

v.

**Richard RAMOS, Appellee.**

**No. 13–97–461–CV.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 1, 1998.

Rehearing Overruled Nov. 12, 1998.

Russell Manning, Demars, Hornblower, Manning & Ward, Corpus Christi, for Appellant.

Keith C. Livesay, Stapleton, livesay & Cowen, Pharr, Carlos Quintana, McAllen, for Appellee.

Before SEERDEN, C.J., and YANEZ and RODRIGUEZ, JJ.

### OPINION ON MOTION FOR REHEARING

RODRIGUEZ, Justice.

We grant appellee's motion for rehearing, withdraw our opinion dated May 21, 1998 and substitute this opinion in its place.

This is an appeal from a post-answer default judgment rendered against appellants Steven Balogh and his company, Kenova Construction Corporation.[1]  Balogh claims

---

1. Balogh and Kenova will be collectively referred to as "Balogh."

he did not have notice of the trial setting and thus the trial court erred in denying his "Motion to Vacate Default Judgment and for New Trial." He additionally raises issues concerning (1) the legal and factual sufficiency of the evidence; (2) whether the plaintiff is entitled to a mixed recovery for tort and contract for the same transaction; (3) whether the plaintiff is entitled to contract damages for his alleged consequential damages; (4) whether the consequential and exemplary damages awarded are manifestly too large; and (5) whether the court erred in rendering judgment in favor of an entity not a party to the suit. We reform and modify the judgment and, as reformed and modified, affirm.

### FACTS

Steven Balogh, a resident of Florida, hired James Rausch to recover funds represented by two checks after the checks were dishonored by the bank of Kenova's Mexican customer. The Mexican attorney engaged by Rausch to assist him in collecting the funds, Heron Gomez, required the original checks in order to proceed. Balogh apparently became dissatisfied with Gomez's handling of the matter and instructed Rausch to fire him, which Rausch did. As Gomez had expended time and effort on Balogh's behalf, he demanded compensation in the amount of $25,000 before he would release the original checks to Rausch.

Rausch contacted appellee Ricardo Ramos, an attorney in McAllen, to assist him in negotiations to retrieve the original checks. After Ramos became involved, Gomez agreed to release the checks upon payment of $5,000. Balogh was pressing Ramos for a quick resolution of the matter and requested that Ramos pay the $5,000 himself. Balogh repeatedly assured Ramos that he would reimburse Ramos for the $5,000 and he gave Ramos an authorization on behalf of Kenova to expend the $5,000.

Ramos withdrew $5,000 from his operating account and engaged an intermediary who exchanged the $5,000 for the original checks. After Balogh arrived from Florida, he obtained the original checks from Ramos and gave Ramos a check in the amount of $5,000, drawn on Kenova's shop account. The $5,000 check was subsequently returned to Ramos by his bank, with the notation, "Payment Stopped." Balogh refused any further contact with Ramos.

Ramos brought suit against Balogh and Kenova in a Hidalgo County district court. After much difficulty, Balogh was eventually served in Florida and entered an answer *pro se.* At Ramos's request, the trial court set a telephonic docket control conference. Balogh did not attend the conference, at which time a trial date was set. Balogh did not appear at trial. The trial court heard evidence and entered a post-answer default judgment against Balogh and Kenova. Thereafter, it denied Balogh's motion for new trial.

### ANALYSIS

■ Balogh's first issue addresses the trial court's denial of his motion for new trial. The trial court's decision to overrule such a motion is subject to review for abuse of discretion. *Cliff v. Huggins,* 724 S.W.2d 778, 778 (Tex.1987); *Strackbein v. Prewitt,* 671 S.W.2d 37, 38 (Tex.1984). We therefore review the record to determine if, based on the facts before it, the trial court abused its discretion in overruling Balogh's motion. For the reasons set out below, we conclude it did not.

■ In making our determination, we are guided by the well-known, three-part test set out in *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939):

(1) the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident, (2) provided the motion for a new trial sets up a meritorious defense, and (3) is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

The prerequisites for setting aside a no-answer default judgment have been applied to post-answer default judgments such as the present case. *Director, State Employees Workers' Compensation Div. v. Evans,* 889 S.W.2d 266, 268 (Tex.1994). If the defendant proves the *Craddock* elements, it is an abuse

of discretion if the trial court fails to grant a new trial. *Old Republic Ins. Co. v. Scott,* 873 S.W.2d 381, 382 (Tex.1994); *Bank One Texas, N.A. v. Moody,* 830 S.W.2d 81, 85 (Tex. 1992).

■ Balogh contends he did not receive notice of the trial setting. To prevail on this point of error, Balogh was required to show his failure to attend trial was not intentional or the result of conscious indifference, but was due to his failure to receive actual or constructive notice of the trial setting. *See Lopez v. Lopez,* 757 S.W.2d 721, 723 (Tex. 1988).

Balogh's motion was accompanied by his affidavit which set out the following: (1) prior to the date of trial, Balogh never received a copy of the court's docket control order dated January 7, 1997, indicating that trial was set for 9:00 a.m. on March 17, 1997; (2) Balogh reviewed the Ramos litigation file kept by Kenova Construction, and no copy of the docket control order was in said file; (3) Balogh made inquiry of Kenova Construction employees, all of whom denied having knowledge of receiving the docket control order; and (4) even if Balogh *had* received a copy of the docket control order, the order misstyled the case as *"Ricardo Flores v. Steven Balogh"* and Balogh had never dealt with "Ricardo Flores".

We conclude Balogh's affidavit sufficiently sets out that he did not receive the docket control order and thus had no actual notice of the March 17, 1997 trial setting. What this evidence does not address, however, is whether his failure to answer before judgment was intentional or due to conscious indifference. Balogh never states he did not receive notice of Ramos's request for a docket control conference. Indeed, any such claim would lack credibility in light of the trial clerk's notation at the bottom of the notice that it was mailed to Balogh, and the clerk's affidavit testimony that she mailed the notice to Balogh. On the actual docket control order, the clerk noted on the bottom of the page that "No phone number [was] available for Mr. Balogh per Elizabeth. Although Notice for Docket Control Conference was sent to Mr. Balogh." The notice for the docket control conference provided:

As requested by Carlos Quintana, the above numbered and styled cause has been set on the 7th day of January, 1997 at 3:00 pm for the following:

DOCKET CONTROL CONFERENCE, Mr. Carlos Quintana will initiate the call if one is necessary.

Balogh knew that a docket control conference was scheduled, and knew the day and time the conference was to occur. When the appointed time arrived, and he was not contacted by the clerk's office or by Quintana's office, rather than calling the clerk, Balogh took no action. We cannot countenance a party doing nothing to protect its rights and then complaining on appeal that its rights have been violated. *See generally, Brown v. University of Tex. Health Ctr. at Tyler,* 957 S.W.2d 911, 916 (Tex.App.—Tyler 1997, no writ) (when notified of a hearing, party's opportunity to be heard is lost by his own inaction in failing to attend).

We find that Balogh did not meet the requirements under *Lopez* to show his failure to attend trial was not intentional or the result of his conscious indifference, but was due to an accident or mistake. *Lopez,* 757 S.W.2d at 723. Inasmuch as Balogh failed to satisfy the first prong of the *Craddock* test, we conclude the trial court did not abuse its discretion in overruling the motion for new trial. Balogh's first point of error is overruled.

■ In issue number seven, Balogh cites to *Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex.1983), and asserts that, in the absence of any pleadings specifically requesting the relief, the trial court erred in entering a judgment which contained a finding that "neither James E. Rausch nor [Ramos] were negligent." Balogh failed to preserve this assertion because, unlike the appellant in *Cunningham,* Balogh did not raise the issue in his motion for new trial, nor present his complaint to the trial court. The rules of appellate procedure provide that as a requisite to presenting a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds

for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint." Tex.R.App. P. 33.1(1)(A); *Hirczy v. Hirczy*, 838 S.W.2d 783, 785 (Tex. App.—Corpus Christi 1992, writ denied). Having failed to preserve the alleged error for our review, issue number seven is overruled.

Asserting deficiencies in Balogh's motion for new trial, Ramos urges this Court to find Balogh failed to preserve his complaints regarding issues two through six. We have reviewed Balogh's motion for new trial, and while he did perfunctorily list eighteen points of error, preceding the list, Balogh set out the arguments and authorities that give rise to the asserted points of error. Accordingly, we find this argument without merit.

■ Ramos also contends Balogh failed to preserve error with respect to issues two, five, and six, which contest the sufficiency of the evidence to support the trial court's finding of fraud and awards of both consequential and punitive damages. The judgment at issue does not distinguish between the various elements of Ramos's damages, but instead provides for a global award, which encompassed Ramos's claimed damages for the dishonored check, consequential damages, punitive damages, and attorney's fees. Citing to our decision in *Greater Houston Transp. Co. v. Zrubeck*, 850 S.W.2d 579, 589 (Tex.App.—Corpus Christi 1993, writ denied), and to *Amelia's Automotive, Inc. v. Rodriguez*, 921 S.W.2d 767, 771 (Tex.App.— San Antonio 1996, no writ), Ramos claims that because Balogh did not address each and every damage element and show that not a single element was supported by sufficient evidence, Balogh waived his complaints regarding the sufficiency of the evidence. We disagree.

Both *Greater Houston* and *Amelia's Automotive* were cases tried to the jury upon submission of a broad form question. Thus, on appeal, the reviewing court could not "ascertain with certainty what amount of the damages award is attributable to each element." *Greater Houston*, 850 S.W.2d at 589. In the present non-jury case, we have the reporter's record from trial. After the close

of Ramos's evidence and closing argument, the trial court stated:

> Okay. I'll grant the request for the $5,000, plus interest, which is the amount of the check paid by Mr. Ramos on behalf of Balogh. Also, award the $30,000 in consequential damages for Mr. Ricardo Ramos. I'm also going to assess $100,000 as exemplary damages against the Defendant Balogh and Kenova Construction.

> I'll also grant the request for the $8,550 in attorney's fees for the trial of this case. Also grant $15,000 attorney's fees for the appeal of this case. And, also, an additional $5,000 as attorney's fees if there is an application for writ of error. I'll also grant the $10,000 request on attorney's fees for the actions to be filed in Florida State court. And, also, grant the request for the $15,000 in attorney's fees for the appellate process—for attorney's fees for the appellate process in Florida.

■ Ramos contends this language amounts to mere comments from the bench to which we cannot attach any significance. *See Sharp v. Hobart*, 957 S.W.2d 650 652 n. 5 (Tex.App.—Austin 1997, no writ)(oral comments do not constitute findings of fact and conclusions of law). Again, we disagree. Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk. *Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex.1982); *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 59 (Tex.1970). As the supreme court explained in *Reese v. Piperi:*

> The judge's intention to render judgment in the future cannot be a present rendition of judgment. The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made. The opportunities for error and confusion may be minimized if judgments will be rendered only in writing and signed by the trial judge after careful examination. Oral rendition is proper under the present rules, but orderly administration requires that form of rendition to be in and by spoken words, not in mere cognition, and to have effect only insofar as those words

state the pronouncement to be a present rendition of judgment.

534 S.W.2d 329, 330 (Tex.1976) (orig.proceeding). Thus, the words used by the trial court must clearly indicate the intent to render judgment at the time the words are expressed. *S & A Restaurant Corp. v. Leal,* 892 S.W.2d 855, 858 (Tex.1995). The application of these principles leads us to conclude the trial court in this case rendered judgment immediately after trial and his statements were not merely comments or a substitution for findings of fact and conclusions of law. We thus have before us the amounts attributable to Ramos's various elements of damage, and proceed to a determination of the sufficiency of the evidence to support the damages awarded.

■ In issue number two, Balogh contends there is no evidence to support Ramos's claim of fraud or the award of punitive damages.[2] In reviewing a no evidence point, we must consider only the evidence and reasonable inferences therefrom which tend to support the jury findings, disregarding all contrary evidence and inferences. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex.1989). We sustain a legal sufficiency challenge when the record discloses (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Cecil v. Smith,* 804 S.W.2d 509, 510 n. 2 (Tex.1991).

■ The supreme court has defined fraudulent inducement as a simple fraud claim. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990). The elements of fraud and fraudulent inducement,

applicable here, are (1) a material misrepresentation, (2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *Id.*

■ Ramos testified that when he informed Balogh that Gomez demanded he be paid $5,000 before he would release the dishonored checks, Balogh stated, " 'Well, look, I assure you that if you will just do that, I will pay you. I will take care of you. Please do that. You don't understand, they're going to pay me $800,000. Five thousand dollars is nothing.' " Ramos's testimony continued:

> I said, "Look, I don't know anything about this. I just know that that's the situation." I said, "Who do the checks belong to?" He said, "The checks belong to Kenova." I said, "Well, at the minimum, what I'm going to need is authorization from Kenova, but I'm relying on you." He said, "Don't worry about it. You go ahead and do it." He sent me a fax, dated March the 15th, and authorized me to pay the $5,000 and noticed the two checks on there.

Ramos testified further about the representation and his reliance on Balogh's promise to pay:

> Q: Now, Mr. Ramos, on a day-to-day basis, do you have this kind of money just sitting around?
>
> A: No, no. This is money that's used to pay overhead. This is money that's necessary for cash flow for the office. That is the kind of money that I assume that I was going out on a limb to do, because this is not what I normally do, and I was doing it because of his direct representations to me that he would be over by Monday, at the lat-

---

2. We find Balogh's complaint regarding punitive damages has not been sufficiently briefed. While he claims the evidence is insufficient, he does not provide any argument or authorities to support that claim. TEX.R.APP. P. 38.1(h). He merely states "Exemplary damages cannot be admitted by default. *Sunrizon Homes v. Fuller,* 747 S.W.2d 530, 534 (Tex.App.—San Antonio 1988, writ denied)." *Sunrizon Homes* stands for the proposition that in a default situation, where the damages are unliquidated, the trial court must receive testimony to support the imposition of such damages. Balogh's citation to *Sunrizon* does not support his argument regarding the sufficiency of the evidence to support the award of punitive damages. As the court here heard testimony on the issue of exemplary damages in this case, it complied with *Sunrizon.* Because Balogh has not presented us with any other basis upon which to conduct a review of the sufficiency of testimony relating to punitive damages, we decline to do so.

est, just a few days, to take care of the matter.

Concerning Balogh's knowledge of the misrepresentation, Ramos testified that he believed Balogh made the misrepresentations concerning payment "premeditatedly": "He (Balogh) set up a trap, premeditatively [sic]. He came down, reassured me a hundred times—that's an exaggeration, but many times, not to be concerned, he would take care of it. So I feel that he and Kenova, both, premeditatively [sic] made representations I was to rely on, which I did, to my detriment."

The trial court also had before it the written authorization Balogh sent to Ramos on behalf of Kenova, the dishonored check, and a copy of a letter from Texas Commerce Bank to Ramos, stating the check had been returned with the notation "payment stopped."

We find the foregoing evidence more than sufficient to sustain the trial court's finding of fraud. Balogh's second issue is overruled.

■ By issue number three, Balogh complains the judgment in this case erroneously gives Ramos a double recovery by awarding damages for both breach of contract and fraud. In the recent case of *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41 (Tex.1998), the supreme court held that

> tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract. Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with this well-established law, and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement. We therefore disapprove of the following appellate court opinions to the extent that they hold that tort damages cannot be

recovered for a fraudulent inducement claim absent an injury that is distinct from any permissible contractual damages.... We instead conclude that, if a plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim, any damages suffered as a result of the fraud sound in tort.

*Id.* at 47 [citations omitted]; *see also American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex.1990) (tort damages not precluded for a tortious interference with contract claim, notwithstanding fact that the damages for the tort claim compensated for the same economic losses that were recoverable under a breach of contract claim). Balogh's issue number three is overruled.

In issue number six, Balogh asserts the evidence is legally and factually insufficient to support the trial court's award of $30,000 in consequential damages.

■ We have previously set out the standard of review used to resolve a legal sufficiency challenge. When reviewing for factual sufficiency, a reviewing court looks at all the evidence and determines whether the finding was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Ramos testified he suffered the following damages: (1) $4,500 for the time "lost from my office"; (2) $500 for extra time that his paralegal spent in reconciling his bank statement; and (3) $25,000 for financial embarrassment or mental distress. Concerning the $4,500 and $500 "time lost" portion of the consequential damages, Balogh states "the evidence of distractions at Ramos'[s] office will not support a recovery for **contractual** consequential damages." (Emphasis added)

As noted above, the supreme court dispensed with this argument in *Formosa Plastics Corp. USA*, 960 S.W.2d at 46. We previously found the evidence sufficient to sustain the trial court's finding of fraudulent inducement. Thus, any damages emanating from that fraud sound in tort, not contract. Balogh's contention is overruled.

With respect to the $25,000 for financial embarrassment or mental anguish, the supreme court established the evidentiary requirements for recovery of mental anguish damages in *Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex.1995): the evidence must show the nature, duration, and severity of mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine. *Id.* at 444. Ramos's testimony regarding his mental anguish is set out below:

> The financial embarrassment through all this thing and having to put up with this, I really feel that this—besides the loss of time and paralegal time, the financial embarrassment on this thing, and the fact that I was, quote, unquote, "fooled," has its own factors. There are times of uneven flow in your office, in terms of income, and when things are low, to take a $5,000 loss, put worry and concern on you. You can wake up in the middle of the night saying, "Now, what am I going to do?" I've got to go impose upon friends, to hire their services. I've got to impose upon other people to help me with all this. I think I've been damaged in terms of mental distress, financial embarrassment to the tune of $25,000.

There was no testimony from Ramos on the duration or severity of his mental anguish. The cited testimony shows Ramos suffered no more than "mere worry, anxiety, vexation, embarrassment, or anger," which does not rise to a compensable level of emotional distress. *Parkway Co.*, 901 S.W.2d at 445. Balogh's issue number six is sustained. Due to our disposition of issue number six, we need not address issues four and five. TEX.R.APP. P. 47.1.

The courts of appeals are empowered to affirm, modify, correct, reform, reverse and remand, reverse and render the judgment that the court below should have rendered, or dismiss. TEX.R.APP. P. 43.2. Accordingly, we REFORM the judgment to read "... that Plaintiff Ricardo A. Ramos, recover from Defendants jointly the sum of $108,750 plus prejudgment interest at the rate of 10% from April 22, 1996, plus all costs of court." [3] As

reformed and modified, the judgment is AFFIRMED.

---

3. We note the original judgment awarded Ramos the sum of $133,750, which is $9,800 less than the amount awarded when the court orally rendered its decision from the bench.