MEMORANDUM OPINION

 

No. 04-09-00607-CV

 

LUFKIN INDUSTRIES,
INC.,

Appellant

 

v.

 

TRANSPORTES DE
NUEVO LAREDO, S.A. DE C.V.,

Appellee

 

From the 111th
Judicial District Court, Webb County, Texas

Trial Court No. 2005-CV-F001087
D2

Honorable Raul
Vasquez, Judge Presiding

 

Opinion by:   Catherine Stone, Chief Justice

 

Sitting:                     Catherine Stone, Chief Justice

                     Sandee
Bryan Marion, Justice

                     Steven
C. Hilbig, Justice

 

Delivered and Filed: 
September 29, 2010

 

REVERSED AND
RENDERED

 

           Lufkin
Industries, Inc. appeals a judgment entered in favor of Transportes de Nuevo
Laredo, S.A. de C.V. (“TNL”) based on a jury’s finding that Lufkin converted
TNL’s personal property.  Lufkin contends the evidence is legally and factually
insufficient to establish that TNL had a superior right to possession of the
property or that TNL sustained $589,998.80 in damages as a result of the
alleged conversion.  Because we hold the evidence is legally insufficient to
support the jury’s damage award, we reverse the trial court’s judgment and
render a take nothing judgment in favor of Lufkin.

Background

           Trailer
Source Inc. of Texas was a distributor for Lufkin.  Over a two-year period, TNL
ordered and purchased, through Trailer Source, numerous products manufactured
by Lufkin.  Pertinent to this appeal, TNL paid Trailer Source for 60 pup
trailers and 28 dollies.[1] 
Trailer Source placed an order with Lufkin for this equipment.  Because Trailer
Source failed to pay Lufkin the full purchase price for the equipment, Lufkin
retained 10 pup trailers and 3 dollies in its possession.  After applying a down
payment to the remaining unpaid purchase price, Lufkin released the 3 dollies
and 5 of the 10 pup trailers it was retaining.  TNL eventually sued Lufkin for
conversion.  A jury found that Lufkin had converted TNL’s personal property and
awarded TNL damages based on loss of use or lost profits.  Lufkin appeals.

Discussion

Although
the appeal presents several legal issues, for the reasons set forth below, we
need only address the damages issue.

When
reviewing a legal sufficiency or “no evidence” challenge, we determine “whether
the evidence at trial would enable reasonable and fair-minded people to reach
the verdict under review.”  City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005).  We view the evidence in the light favorable to the verdict,
crediting favorable evidence if reasonable jurors could and disregarding
contrary evidence unless reasonable jurors could not.  Id.  Appellate
courts will sustain a legal sufficiency or “no evidence” challenge when: (a)
there is a complete absence of evidence of a vital fact; (b) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (c) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (d) the evidence conclusively establishes
the opposite of the vital fact.  Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).  By contrast, when reviewing a factual
sufficiency challenge, we consider and weigh all the evidence supporting and
contradicting the finding.  Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989).  We set aside the finding only if the evidence is
so weak or if the finding is so against the great weight and preponderance of
the evidence that it is clearly wrong and unjust.  Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001).  “Jurors are the sole judges of the credibility
of the witnesses and the weight to give their testimony.”  City of Keller,
168 S.W.3d at 819.

The rule
concerning adequate evidence of lost profit damages is well established:

 

Recovery for
lost profits does not require that the loss be susceptible of exact
calculation.  However, the injured party must do more than show that they [sic]
suffered some lost profits.  The amount of the loss must be shown by competent
evidence with reasonable certainty.  What constitutes reasonably certain
evidence of lost profits is a fact intensive determination.  As a minimum,
opinions or estimates of lost profits must be based on objective facts,
figures, or data from which the amount of lost profits can be ascertained. 
Although supporting documentation may affect the weight of the evidence, it is
not necessary to produce in court the documents supporting the opinions or
estimates.

 

ERI
Consulting Engineers, Inc. v. Swinnea, No. 07-1042, 2010 WL 1818395, at *7
(Tex. May 7, 2010) (quoting Holt Atherton Indus., Inc. v. Heine, 835
S.W.2d 80, 84 (Tex. 1992)); see also Amelia’s Auto., Inc. v.
Rodriguez, 921 S.W.2d 767, 771 (Tex. App.—San Antonio 1996, no writ)
(individual entitled to recover lost profits as loss of use damages where
individual loses the right to accrue earnings from the use of his property).

           Eduardo
Javier Hinojosa is the president of TNL and has a degree in public accounting. 
His testimony provided the sole evidence of TNL’s damages.  Hinojosa testified
that TNL provided three types of services: (1) LTL; (2) truck load; and (3) special
services relating to articles of big volume and heavy weight.  LTL means “less
than truck load,” and is a service whereby one trailer has shipments directed
to different customers.  Since 2001, LTL services accounted for approximately
35% of TNL’s business.  In the LTL business, TNL uses both pup trailers and
regular trailers.

Hinojosa
testified that TNL had four or five different LTL destinations in Mexico.  The
Mexico City destination is the most common.  TNL charges an average of $3,900
for round trip LTL service from Nuevo Laredo to Mexico City.  An LTL truck can
make an average of eight trips per month.  The profit on LTL business is 26
percent before taxes.

On
cross-examination, Hinojosa stated that TNL had approximately 350-400 regular
trailers.  Hinojosa explained he could not be precise about the number of
trailers because TNL was constantly buying and selling equipment.  Hinojosa
stated that TNL had about 60 pup trailers.  Hinojosa stated that TNL did not
use any of the pup trailers that it had purchased from Trailer Source, and that
the 50 pup trailers and 25 dollies he had received from Trailer Source were
parked at TNL’s terminal in Laredo.  He testified that he could not export the
pup trailers and dollies for use in Mexico until the entire order was
complete.  In addition, Hinojosa stated that the equipment was obsolete by
2005, and the custom port would not accept old equipment.

           Lufkin
asserts that Hinojosa never testified that he lost business as a result of not
having the pup trailers and dollies that Lufkin retained.  Lufkin further
asserts the record fails to demonstrate that TNL could not satisfy the entirety
of its LTL demand with regular trailers and pup trailers already in TNL’s
possession.  In response to Lufkin’s assertions, TNL refers to testimony by
Hinojosa that TNL was buying additional equipment “[b]ecause [TNL] had business
for them” and that Hinojosa told a Lufkin employee that TNL “had the idea of
increasing business in Mexico” and ordered more trailers “[b]ecause [TNL] had a
demand for such.”  When Hinojosa’s testimony is read in context, however, this
testimony related to TNL’s purchase of 150 regular trailers from Trailer Source
in 2001, not to its purchase of the 60 pup trailers and 28 dollies.  Even if
the testimony could be construed as applying to the pup trailers and dollies,
it still lacks any objective facts, figures, or data from which the amount of
lost profits can be determined.  See ERI Consulting Engineers, Inc.,
2010 WL 1818395, at *7.

TNL
cites two opinions in support of its contention that Hinojosa’s testimony was
sufficient to support the damage award.  In the first opinion, White v.
Southwestern Bell Telephone Co., 651 S.W.2d 260, 261 (Tex. 1983), the
plaintiff sought to recover as damages the lost profits resulting from
Southwestern Bell’s incorrect listing of his telephone number in the yellow
pages in 1978.  In reversing a directed verdict in favor of Southwestern Bell,
the court noted that the evidence included sales data from 1974 through 1980
and the testimony of a certified public accountant, who used linear regression
analysis to determine what the plaintiff’s sales should have been in 1978.  Id.
at 262.  No such evidence was introduced in the instant case.  In the second
opinion relied on by TNL, the appellate court reversed the trial court’s
judgment because the evidence was legally insufficient to support the damages
award.  See Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge) L.L.C., 207
S.W.3d 801, 827 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

TNL’s
damage calculations are premised on having enough increased business that all
of the undelivered pup trailers and dollies would be used on eight LTL trips
each month.  It is proper to consider a normal increase in business in
calculating lost profits, See Tex. Instruments, Inc. v. Teletron Energy
Mgmt., Inc., 877 S.W.2d 276, 279 (Tex. 1994) (quoting Southwest Battery
Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1098-1099 (1938)).  However, TNL’s
calculations are premised on its business increasing to such an extent that the
10 undelivered pup trailers would have made 8 trips each month on the Nuevo
Laredo to Mexico City route in addition to the regular trailers and pup
trailers otherwise available for TNL to use in its business.  See Atlas
Copco Tools, Inc. v. Air Power Tool & Hoist, Inc., 131 S.W.3d 203,
208-09 (Tex. App.—Fort Worth 2004, pet. denied) (noting calculations of lost
profits of distributor with established business were improper where the
calculations were based on unsubstantiated projections of increased business
that had no relation to established results); Holland v. Hayden, 901
S.W.2d 763, 766 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (holding no
evidence supported lost profits damages where testimony that expansion to existing
business would quadruple profits was not supported by any objective information
but was merely speculation).  Hinojosa did not testify that TNL would have been
able, in all likelihood, to sell a sufficient number of LTL routes from Nuevo
Laredo to Mexico City such that all of the equipment purchased from Lufkin
would be fully utilized.  See Tex. Instruments, Inc., 877 S.W.2d at 280
(noting lost profits recoverable where evidence established partnership would
have been able, in all likelihood, to sell the additional batteries at the
profit claimed); see also Holt Atherton Indus., Inc., 835 S.W.2d
at 85 (evidence legally insufficient where testimony failed to establish that
sufficient business existed to keep bulldozer alleged to have been tortiously
withheld working full time).

Because
there is a complete absence of evidence that Hinojosa lost any business due to
Lufkin retaining possession of the pup trailers and dollies, the evidence is
legally insufficient to support the jury’s damage award.  Because we hold the
evidence is legally insufficient to support the damage award, we do not further
address whether Lufkin could have been liable for conversion.[2]  Tex.
R. App. P. 47.1 (opinion should address only issues necessary to final
disposition).

Conclusion

 

The
trial court’s judgment is reversed, and judgment is rendered that TNL take
nothing on its conversion claim against Lufkin.

Catherine Stone, Chief Justice

 

 

 

 

 

 

 

 









[1]Regular trailers are 53 feet in length, and pup
trailers are approximately 28 feet long.  Dollies connect pup trailers, which
are typically used in sets of two. 

 





[2] In addition to requesting that this
court affirm the judgment awarding TNL damages for lost profits, on appeal, TNL
also requests this court to rule that TNL is entitled to possession of the five
pup trailers still retained by Lufkin.  Because TNL did not file a notice of
appeal, we would be procedurally precluded from granting the requested relief
even if we were to hold that Lufkin could be liable for conversion.  See
Tex. R. App. P. 25.1(c) (“A party
who seeks to alter the trial court’s judgment … must file a notice of
appeal.”).