Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-09-00607-CV

**LUFKIN INDUSTRIES, INC.**,
Appellant

v.

**TRANSPORTES DE NUEVO LAREDO, S.A. DE C.V.**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2005-CV-F001087 D2
Honorable Raul Vasquez, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  September 29, 2010

REVERSED AND RENDERED

Lufkin Industries, Inc. appeals a judgment entered in favor of Transportes de Nuevo Laredo, S.A. de C.V. ("TNL") based on a jury's finding that Lufkin converted TNL's personal property.  Lufkin contends the evidence is legally and factually insufficient to establish that TNL had a superior right to possession of the property or that TNL sustained $589,998.80 in damages as a result of the alleged conversion.  Because we hold the evidence is legally insufficient to

support the jury's damage award, we reverse the trial court's judgment and render a take nothing judgment in favor of Lufkin.

## BACKGROUND

Trailer Source Inc. of Texas was a distributor for Lufkin. Over a two-year period, TNL ordered and purchased, through Trailer Source, numerous products manufactured by Lufkin. Pertinent to this appeal, TNL paid Trailer Source for 60 pup trailers and 28 dollies.[1] Trailer Source placed an order with Lufkin for this equipment. Because Trailer Source failed to pay Lufkin the full purchase price for the equipment, Lufkin retained 10 pup trailers and 3 dollies in its possession. After applying a down payment to the remaining unpaid purchase price, Lufkin released the 3 dollies and 5 of the 10 pup trailers it was retaining. TNL eventually sued Lufkin for conversion. A jury found that Lufkin had converted TNL's personal property and awarded TNL damages based on loss of use or lost profits. Lufkin appeals.

## DISCUSSION

Although the appeal presents several legal issues, for the reasons set forth below, we need only address the damages issue.

When reviewing a legal sufficiency or "no evidence" challenge, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id*. Appellate courts will sustain a legal sufficiency or "no evidence" challenge when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight

---

[1]Regular trailers are 53 feet in length, and pup trailers are approximately 28 feet long. Dollies connect pup trailers, which are typically used in sets of two.

to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). By contrast, when reviewing a factual sufficiency challenge, we consider and weigh all the evidence supporting and contradicting the finding. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). "Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony." *City of Keller*, 168 S.W.3d at 819.

The rule concerning adequate evidence of lost profit damages is well established:

> Recovery for lost profits does not require that the loss be susceptible of exact calculation. However, the injured party must do more than show that they [sic] suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates.

*ERI Consulting Engineers, Inc. v. Swinnea*, No. 07-1042, 2010 WL 1818395, at *7 (Tex. May 7, 2010) (quoting *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)); *see also Amelia's Auto., Inc. v. Rodriguez*, 921 S.W.2d 767, 771 (Tex. App.—San Antonio 1996, no writ) (individual entitled to recover lost profits as loss of use damages where individual loses the right to accrue earnings from the use of his property).

Eduardo Javier Hinojosa is the president of TNL and has a degree in public accounting. His testimony provided the sole evidence of TNL's damages. Hinojosa testified that TNL

provided three types of services: (1) LTL; (2) truck load; and (3) special services relating to articles of big volume and heavy weight. LTL means "less than truck load," and is a service whereby one trailer has shipments directed to different customers. Since 2001, LTL services accounted for approximately 35% of TNL's business. In the LTL business, TNL uses both pup trailers and regular trailers.

Hinojosa testified that TNL had four or five different LTL destinations in Mexico. The Mexico City destination is the most common. TNL charges an average of $3,900 for round trip LTL service from Nuevo Laredo to Mexico City. An LTL truck can make an average of eight trips per month. The profit on LTL business is 26 percent before taxes.

On cross-examination, Hinojosa stated that TNL had approximately 350-400 regular trailers. Hinojosa explained he could not be precise about the number of trailers because TNL was constantly buying and selling equipment. Hinojosa stated that TNL had about 60 pup trailers. Hinojosa stated that TNL did not use any of the pup trailers that it had purchased from Trailer Source, and that the 50 pup trailers and 25 dollies he had received from Trailer Source were parked at TNL's terminal in Laredo. He testified that he could not export the pup trailers and dollies for use in Mexico until the entire order was complete. In addition, Hinojosa stated that the equipment was obsolete by 2005, and the custom port would not accept old equipment.

Lufkin asserts that Hinojosa never testified that he lost business as a result of not having the pup trailers and dollies that Lufkin retained. Lufkin further asserts the record fails to demonstrate that TNL could not satisfy the entirety of its LTL demand with regular trailers and pup trailers already in TNL's possession. In response to Lufkin's assertions, TNL refers to testimony by Hinojosa that TNL was buying additional equipment "[b]ecause [TNL] had business for them" and that Hinojosa told a Lufkin employee that TNL "had the idea of

increasing business in Mexico" and ordered more trailers "[b]ecause [TNL] had a demand for such." When Hinojosa's testimony is read in context, however, this testimony related to TNL's purchase of 150 regular trailers from Trailer Source in 2001, not to its purchase of the 60 pup trailers and 28 dollies. Even if the testimony could be construed as applying to the pup trailers and dollies, it still lacks any objective facts, figures, or data from which the amount of lost profits can be determined. *See ERI Consulting Engineers, Inc.*, 2010 WL 1818395, at *7.

TNL cites two opinions in support of its contention that Hinojosa's testimony was sufficient to support the damage award. In the first opinion, *White v. Southwestern Bell Telephone Co.*, 651 S.W.2d 260, 261 (Tex. 1983), the plaintiff sought to recover as damages the lost profits resulting from Southwestern Bell's incorrect listing of his telephone number in the yellow pages in 1978. In reversing a directed verdict in favor of Southwestern Bell, the court noted that the evidence included sales data from 1974 through 1980 and the testimony of a certified public accountant, who used linear regression analysis to determine what the plaintiff's sales should have been in 1978. *Id.* at 262. No such evidence was introduced in the instant case. In the second opinion relied on by TNL, the appellate court reversed the trial court's judgment because the evidence was legally insufficient to support the damages award. *See Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge) L.L.C.*, 207 S.W.3d 801, 827 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

TNL's damage calculations are premised on having enough increased business that all of the undelivered pup trailers and dollies would be used on eight LTL trips each month. It is proper to consider a normal increase in business in calculating lost profits, *See Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994) (quoting *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098-1099 (1938)). However, TNL's

calculations are premised on its business increasing to such an extent that the 10 undelivered pup trailers would have made 8 trips each month on the Nuevo Laredo to Mexico City route in addition to the regular trailers and pup trailers otherwise available for TNL to use in its business. *See Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*, 131 S.W.3d 203, 208-09 (Tex. App.—Fort Worth 2004, pet. denied) (noting calculations of lost profits of distributor with established business were improper where the calculations were based on unsubstantiated projections of increased business that had no relation to established results); *Holland v. Hayden*, 901 S.W.2d 763, 766 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (holding no evidence supported lost profits damages where testimony that expansion to existing business would quadruple profits was not supported by any objective information but was merely speculation). Hinojosa did not testify that TNL would have been able, in all likelihood, to sell a sufficient number of LTL routes from Nuevo Laredo to Mexico City such that all of the equipment purchased from Lufkin would be fully utilized. *See Tex. Instruments, Inc.*, 877 S.W.2d at 280 (noting lost profits recoverable where evidence established partnership would have been able, in all likelihood, to sell the additional batteries at the profit claimed); *see also Holt Atherton Indus., Inc.*, 835 S.W.2d at 85 (evidence legally insufficient where testimony failed to establish that sufficient business existed to keep bulldozer alleged to have been tortiously withheld working full time).

Because there is a complete absence of evidence that Hinojosa lost any business due to Lufkin retaining possession of the pup trailers and dollies, the evidence is legally insufficient to support the jury's damage award. Because we hold the evidence is legally insufficient to support the damage award, we do not further address whether Lufkin could have been liable for

conversion.[2]   TEX. R. APP. P. 47.1 (opinion should address only issues necessary to final disposition).

## CONCLUSION

The trial court's judgment is reversed, and judgment is rendered that TNL take nothing on its conversion claim against Lufkin.

Catherine Stone, Chief Justice

---

[2] In addition to requesting that this court affirm the judgment awarding TNL damages for lost profits, on appeal, TNL also requests this court to rule that TNL is entitled to possession of the five pup trailers still retained by Lufkin. Because TNL did not file a notice of appeal, we would be procedurally precluded from granting the requested relief even if we were to hold that Lufkin could be liable for conversion.  *See* TEX. R. APP. P. 25.1(c) ("A party who seeks to alter the trial court's judgment … must file a notice of appeal.").